IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| The Satanic Temple, Inc. | Case No. 21-CV-00336 (WMW/LIB) |
| Plaintiff, | |
| v. | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |
| City of Belle Plaine, MN, | |
| Defendant. | |

## INTRODUCTION

This is the second lawsuit that Plaintiff Satanic Temple ("the Temple") has filed against the City of Belle Plaine in this Court based on the same events in 2017. Res judicata bars a plaintiff from bringing against the same defendant any claims that arise out of the same nucleus of operative facts as the claims in the first lawsuit. The Temple's new complaint should be dismissed on res judicata alone. Even if the Court were to reach the merits of the Temple's claims, however, none of them survive the Rule 12(b)(6) standard. Accordingly, this Court should dismiss the complaint with prejudice.

## BACKGROUND

Just as it did in the first lawsuit, the Temple bases this second lawsuit on two resolutions that the City Council adopted in 2017. The first, Resolution 17-020 ("the Enacting Resolution"), created a limited-public-forum policy. The second, Resolution 17-090 ("the Rescinding Resolution"), eliminated the limited-public-

forum policy. *See Satanic Temple v. City of Belle Plaine* (*Satanic Temple I*), 475 F. Supp. 3d 950, 956–57 (D. Minn. 2020).

### A.     The City created a limited public forum in February 2017.

Sometime in August 2016, the Belle Plaine Veterans Club placed a display of a soldier kneeling by a grave-marker cross in Veterans Memorial Park, a City-owned, public park ("the Park").[1] The City did not give permission for the display to be placed in the Park.[2] The display was removed in February 2017.[3]

On February 21, 2017, the City Council adopted the Enacting Resolution. *Satanic Temple I*, 475 F. Supp. 3d at 956. The Enacting Resolution stated that the City "designates a limited public forum in Veterans Memorial Park for the express purpose of allowing individuals or organizations to erect and maintain privately owned displays that honor and memorialize living or deceased veterans[.]"[4] The Enacting Resolution also stated that no display may be installed without first obtaining a permit from the City, that the party requesting a permit is responsible for erecting the display upon approval of a permit from the City, and that the requesting party and not the City shall own any display erected in the limited public forum. The Enacting Resolution required that displays must be removed

---

[1] ECF.1 ¶¶ 15–16.

[2] ECF.1 ¶ 15.

[3] *See* ECF.1 ¶¶ 25–26, ECF.1-1 (Ex. 2).

[4] ECF.1-1 (Ex. 7 ¶ 1).

within one year from the date of approval of a permit. The Enacting Resolution stated that, "[i]n the event the City desires to close the limited public forum or rescind this policy, the City . . . may terminate all permits by giving ten (10) days' written notice . . . ."[5]

## B. The City issued two display permits in March 2017.

After the adoption of the Enacting Resolution, the City received two applications to place displays in the limited public forum in the Park. The first application the City received was from the Belle Plaine Veterans Club.[6] The second application the City received was from Reason Alliance Ltd. (with an address stating "c/o The Satanic Temple").[7] The City approved both applications.[8] The City mailed the permits on March 29, 2017.[9] The letters that went to both applicants specifically stated that the "permit is good for one year from the date of this letter."[10]

---

[5] ECF.1-1 (Ex. 7 ¶ 13).

[6] ECF.1 ¶¶ 103–04; ECF.1-1 (Ex. 9).

[7] ECF.1 ¶¶ 101, 104; ECF.1-1 (Ex. 8).

[8] ECF.1 ¶¶ 149–50; ECF.1-1 (Exs. 12, 13).

[9] ECF.1-1 (Exs. 8, 9).

[10] ECF.1-1 (Exs. 12, 13).

The Belle Plaine Veterans Club placed its display in the limited public forum in the Park in April 2017.[11] The Belle Plaine Veterans Club voluntarily removed its display on or about July 14, 2017.[12]

Neither Reason Alliance nor the Temple ever placed a display in the Park under the permit issued by the City in March 2017 ("the Permit").

### C.     The City closed the limited public forum in July 2017.

The City Council unanimously enacted the Rescinding Resolution on July 17, 2017. The Rescinding Resolution stated that "the City Council has determined that allowing privately-owned memorials or displays in its Park no longer meets the intent or purpose of the Park."[13] It further stated that "the City Council has also determined that the continuation of the limited public forum may encourage vandalism in the Park, reduce the safety, serenity, and decorum of the Park, unnecessarily burden City staff and law enforcement, and negatively impact the public's health, safety, and welfare."[14] The Rescinding Resolution declared that "[t]he policy established in Resolution 17-020 is rescinded," and that "the limited public forum established in the Park is hereby eliminated."[15]

---

[11] ECF.1 ¶ 151.

[12] ECF.1 ¶¶ 199–200; ECF.1-1 (Ex. 23).

[13] ECF.1-1 (Ex. 25).

[14] ECF.1-1 (Ex. 25).

[15] ECF.1-1 (Ex. 25).

On July 18, 2017, the City Administrator sent a letter to Reason Alliance Ltd., with the address "c/o The Satanic Temple, 64 Bridge Street, Salem, MA," providing notice that the City had adopted the Rescinding Resolution and enclosing a check in the amount of $100 to fully reimburse the Permit application fee.[16] The City's letter also enclosed a copy of the Rescinding Resolution.

### D. The original complaint alleged, among other things, that the City violated the Temple's constitutional rights based on the Enacting Resolution and the Rescinding Resolution.

On April 25, 2019, the Temple filed its first complaint ("the original complaint") regarding the Enacting Resolution and the Rescinding Resolution.[17]

Four of the claims that the Temple asserted against the City in the original complaint, all accusing the City of violating various constitutional provisions, are relevant here: (1) violation of the Free Exercise Clause of the U.S. Constitution; (2) violation of the Minnesota Constitution's provision regarding the free exercise of religion (Minn. Const. art. I, § 16); (3) violation of the guarantees of free speech and association in the First Amendment to the U.S. Constitution; and (4) violation of the Equal Protection Clause of the U.S. Constitution. Each of these claims arose out of the City's adoption of the Enacting Resolution in February 2017, the City's

---

[16] ECF.1-1 (Ex. 27 at 5).

[17] *Satanic Temple I*, No. 19-cv-01122, ECF.1.

issuing two permits under that resolution, and the City's adoption in July 2017 of the Rescinding Resolution, which closed the limited public forum in the Park.

### E. The Court dismissed the Temple's constitutional claims in the original complaint.

The City and the Temple both moved for judgment on the pleadings.[18] On July 31, 2020, the Court denied the Temple's motion and granted the City's motion in part, dismissing the four constitutional claims mentioned earlier without prejudice. *Satanic Temple I*, 475 F. Supp. 3d at 960 (dismissing free-exercise claims under the federal and state constitutions), 961–62 (dismissing free-speech claim under the federal constitution[19]), 963 (dismissing equal-protection claim under the federal constitution).[20]

---

[18] Before the hearing, the Temple replaced its counsel with Matthew Kezhaya and Jason S. Juran. *Satanic Temple I*, No. 19-cv-01122, ECF.36–38, 41. Before the original complaint was filed in *Satanic Temple I* on April 25, 2019, Mr. Kezhaya was counsel of record for the Temple in other cases. *See Satanic Temple v. City of Scottsdale, Ariz.*, No. 2:18-cv-00621 (D. Ariz.), ECF.33; *Cave v. Martin*, No. 4:18-cv-00342 (W.D. Ark.), ECF.40.

[19] The Court also dismissed the Temple's free-speech claim under the Minnesota Constitution; that claim has not been re-asserted here.

[20] All in all, the Court dismissed nine of the ten claims in the original complaint. The surviving claim (promissory estoppel) is the subject of the City's pending summary-judgment motion in *Satanic Temple I*.

**F.**     **Like the original complaint, the proposed amended complaint alleged that the City violated the Temple's constitutional rights based on the Enacting Resolution and the Rescinding Resolution.**

In the first action, the Temple moved, among other things, for leave to amend its complaint.[21] The proposed amended complaint contained an "Explanatory Note" section indicating that it was based on the same factual allegations as the original complaint:

> This amended complaint is intended to correct the pleading deficiencies identified in the Court's order of dismissal (without prejudice) of the constitutional issues. Doc. 46. ***The core factual allegations are still the same***: essentially taking issue with the fact that the City opened a limited public forum to allow a Christian monument but closed it to exclude a Satanic one.[22]

The proposed amended complaint reasserted three federal constitutional claims (free exercise, free speech, and equal protection[23]) and added two more that are relevant here: violation of the Establishment Clause and violation of the Due Process Clause. The establishment claim was based on "the City's decision to create a limited public forum"—that is, the adoption of the Enacting Resolution.[24] The due-process claim was based on the City's issuance of the Permit and the

---

[21] *Satanic Temple I*, No. 19-cv-01122, ECF.64.

[22] *Satanic Temple I*, No. 19-cv-01122, ECF.64-1 ¶ 1 (emphasis added).

[23] The proposed amended complaint did not include any claims under the Minnesota Constitution.

[24] *Satanic Temple I*, No. 19-cv-01122, ECF.64-1 ¶¶ 2, 246.

City's adoption of the Rescinding Resolution, which the Temple alleges took away a property right (the Permit) without due process.[25]

## G. The magistrate judge denied the Temple's motion for leave to amend.

On January 26, 2021, the magistrate judge denied the Temple's motion for leave to amend the complaint.[26] Because the Temple sought to amend its complaint after the deadline in the scheduling order, it was required to show good cause. Fed. R. Civ. P. 16(b). The magistrate judge held that the Temple had not shown good cause to amend: "Plaintiff does not allege any 'new'" facts . . . . Nothing in record presently before the Court indicates that these additional details and theories of liability could not have with due diligence been alleged in Plaintiff's original Complaint."[27]

The magistrate judge also concluded that the Temple's proposed "reasserted" constitutional claims (free exercise, free speech, and equal protection) would be futile because they "fail[ed] to correct the deficiencies observed in Judge Wright's July 31, 2020, Order."[28] As for the two new claims (establishment and due process), the magistrate judge concluded that allowing the Temple to assert those

---

[25] *Satanic Temple I*, No. 19-cv-01122, ECF.64-1 ¶¶ 270, 273–80.

[26] *Satanic Temple I*, No. 19-cv-01122, ECF.79 at 1, 27–28.

[27] *Satanic Temple I*, No. 19-cv-01122, ECF.79 at 27–28 (citations omitted).

[28] *Satanic Temple I*, No. 19-cv-01122, ECF.79 at 28 n.9.

claims "at this late stage of the litigation process, after discovery has closed, and on the eve of trial would be inappropriate."[29]

> **H. Like the original complaint and the proposed amended complaint, the new complaint alleges that the City violated the Temple's constitutional rights based on the Enacting Resolution and the Rescinding Resolution.**

On February 4, 2021, the Temple filed this new action against the City,[30] serving the City with the complaint ("the new complaint") on February 8. Like the proposed amended complaint in *Satanic Temple I*, the new complaint contains an "Explanatory Note" section indicating that it is based on the same factual allegations as the original complaint:

> This complaint is intended to correct the pleading deficiencies identified in the Court's order of dismissal without prejudice of the constitutional issues in a sister case for lack of factual detail. *Satanic Temple v. City of Belle Plaine, Minnesota,* 475 F. Supp. 3d 950 (D. Minn. 2020). **The core factual allegations are still the same**: essentially taking issue with the fact that the City opened a limited public forum to promote a Christian monument but closed it to exclude a Satanic one.[31]

The new complaint also acknowledges that "[a] version of this complaint was proposed as an amended complaint" in *Satanic Temple I,* and that the magistrate judge denied the Satanic Temple's motion for leave to amend.[32] The new

---

[29] *Satanic Temple I*, No. 19-cv-01122, ECF.79 at 28 n.9.

[30] ECF.1.

[31] ECF.1 ¶ 1 (emphasis added).

[32] ECF.1 ¶ 2.

complaint includes the five federal constitutional claims asserted in the proposed amended complaint: free exercise, free speech, equal protection, establishment, and due process (the first three of which were also asserted in the original complaint). The new complaint also asserts three claims under the analogous protections of the Minnesota constitution (free speech, equal protection, and establishment). The state-law free-exercise claim was previously included in the original complaint but not the proposed amended complaint. The state-law equal-protection and establishment claims, although newly asserted, are—like all of the claims in the new complaint—based on the City's adoption of the Enacting Resolution, issuance of permits under that resolution, and subsequent adoption of the Rescinding Resolution.

## I. The new complaint does not include any allegations that could not have with due diligence been asserted in the original complaint.

Although the new complaint contains more detail, the claims are based on the same factual allegations as the original complaint. In evaluating the content of the proposed amended complaint, the magistrate judge correctly observed that the Temple could have included the expanded factual allegations in its original complaint:

> Plaintiff does not allege any 'new' facts which could not have with due diligence been asserted in its original Complaint. Most, if not all, of

the additional factual allegations that Plaintiff now seeks to allege in its Proposed Amended Complaint are matters of public record.[33]

The same is true of the new complaint. Indeed, of the 28 exhibits attached to the new complaint, the Temple possessed, had access to, or knew about all of them, before the Temple filed the original complaint in April 2019. Exhibits 8, 12, 16, 19, 22, 24, and 26 were in the Temple's possession, custody, or control in 2017, because they relate to the Permit application and the Temple's display. Exhibits 1, 2, 7, 25, and 27–28 were publicly available on the City's website in 2017.[34] The Temple had access to Exhibits 3–6, 10–11, 14–15, 17–18, 20–21, and 23 through the City's response in 2017 to a government-data request.[35] That is 26 out of 28 exhibits that the Temple either possessed or could access prior to April 2019. The remaining two exhibits are the Belle Plaine Veterans Club's permit application (Exhibit 9) and permit (Exhibit 13). The Temple knew of the existence of that

---

[33] *Satanic Temple I*, No. 19-cv-01122, ECF 79 at 27 (citations omitted).

[34] *See* https://www.belleplainemn.com/city-council-meeting (last viewed Mar. 1, 2021). These are public records.

[35] *See Satanic Temple I*, No. 19-cv-01122, ECF 92 at 8–9; *see also* ECF 1 ¶ 226 ("In August of 2017, TST obtained some of the City's internal emails about this matter by a public records request. Many of those emails are included as exhibits to this complaint.").

application and permit when the original complaint was filed, as shown by the allegations in the original complaint.[36]

## ARGUMENT

### I. Legal Standard

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. at* 679. The Court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).[37]

---

[36] *See, e.g.*, *Satanic Temple I*, No. 19-cv-01122, ECF.1 ¶¶ 28, 32; *see also id.* ¶¶ 33, 38.

[37] Functionally this standard is the same as for judgment on the pleadings, which in July 2020 this Court granted with regard to four of the claims the Temple seeks to reassert here. *See Satanic Temple I*, 475 F. Supp. 3d at 957–58 (discussing legal standard); *see also Ali v. Frazier*, 575 F. Supp. 2d 1084, 1090 (8th Cir. 2008) (stating that the standard for motions to dismiss for failure to state a claim is the same under Rule 12(b)(6) and Rule 12(c)).

The defense of res judicata "may be raised in a motion to dismiss when the identity of the two actions can be determined from the face of the petition itself," including "public records and materials embraced by the complaint" and "materials attached to the complaint." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763–64 (8th Cir. 2012) (quotations omitted).

## I. The Temple's claims are barred by res judicata (claim preclusion).

"Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979). Res judicata "precludes the relitigation of a claim on grounds that were raised or could have been raised in the prior action." *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir. 1990). Under federal law,[38] a claim is precluded "when '(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action.'" *Elbert v. Carter*, 903

---

[38] Because *Satanic Temple I* was a federal-question case and a federal court denied the motion for leave to amend, federal law applies to the res judicata analysis here. *See, e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("For judgments in federal-question cases . . . federal courts participate in developing 'uniform federal rule[s]' of res judicata . . . ." (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)); *Schaefer v. Putnam*, 827 F.3d 766, 769 (8th Cir. 2016) ("The law of the forum that rendered the first judgment controls the res judicata analysis." (quotation omitted)).

F.3d 779, 782 (8th Cir. 2018) (*quoting Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998)). All four requirements are met here.

### A. The denial of leave to amend was a final judgment on the merits.

The first requirement is satisfied because, for purposes of res judicata, denial of a motion for leave to amend a complaint constitutes a final judgment on the merits. This has been Eighth Circuit law for decades. *See Professional Mgmt. Assocs., Inc. v. KPMG LLP*, 345 F.3d 1030, 1032–33 (8th Cir. 2003) (per curiam) (holding that denial of leave to amend, based on plaintiff's noncompliance with procedural rules, was a judgment on the merits of the claims in the proposed amended pleading for purposes of res judicata); *King v. Hoover Grp., Inc.*, 958 F.2d 219, 222–23 (8th Cir. 1992) ("It is well settled that denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading."); *Poe v. John Deere Co.*, 695 F.2d 1103, 1105–08 (8th Cir. 1982) (affirming summary judgment for the defendant on res judicata grounds in suit arising out of the same nucleus of operative fact as the proposed amended complaint rejected by the district court in an earlier suit); *see also Landscape Props., Inc. v. Whisenhunt*, 127 F.3d 678, 683 (8th Cir. 1997) (discussing *Poe* and *King* and concluding that those cases "are dispositive" as to whether denial of a motion to amend the complaint is a final judgment on the merits for purposes of res judicata).

The District of Minnesota has followed the *Professional Management* line of cases, routinely concluding that a denial of leave to amend constitutes a final judgment for purposes of res judicata. *See, e.g.*, *Seenyur v. Van Coolidge*, No. 16-cv-3832, 2018 WL 400758, at *2–3 (D. Minn. Jan. 12, 2018) (Wright, J.) (dismissing inmate's second suit for violation of constitutional rights based on denial of motion for leave to amend in first suit); *Czech v. Unum Life Ins. Co.*, No. 09-1884, 2009 WL 5033961, at *2 (D. Minn. Dec. 15, 2009) (Montgomery, J.) (holding that denial of motion to amend constitutes a final judgment on the merits for federal law of res judicata); *Crystal Import Corp. v. Avid Identification Sys., Inc.*, 582 F. Supp. 2d 1166, 1170, 1172 (D. Minn. 2008) (Kyle, J.) (following *Professional Management* and dismissing second suit based on res judicata); *Rousseau v. Goodwill/Easter Seals*, No. 04-3949, 2005 WL 226167, at *2–3 (D. Minn. Jan. 26, 2005) (Kyle, J.) (same).

Denial of leave to amend is "final" for purposes of res judicata even if, as here, final judgment has not been rendered in the earlier case. *See Crystal Import Corp.*, 582 F. Supp. 2d at 1170 n.4. And denial of leave to amend is final "even when denial of leave to amend is based on reasons other than the merits, such as timeliness." *Professional Mgmt.*, 345 F.3d at 1032; *see also id.* ("[T]he fact that the district court denied leave to amend because of [plaintiff's] noncompliance with procedural rules is irrelevant. The denial is a judgment on the merits of the claims

in the proposed amended pleading."); *Seenyur*, 2018 WL 400758, at *1–2 (applying res judicata where denial of leave to amend was based on inmate's motion being filed one year after the deadline).

**B.    *Satanic Temple I* was based on proper jurisdiction.**

In *Satanic Temple I*, the Temple alleged and the City admitted that the Court had subject-matter jurisdiction over the case.[39]

**C.    Both suits involve the same parties.**

Both *Satanic Temple I* and this case involve the same parties: the Temple and the City. Although the plaintiff is "The Satanic Temple" in the original complaint and "The Satanic Temple, Inc." in the new complaint, those documents explain that this is merely a clarification as to the entity's name.[40]

**D.    Both suits are based on the same claims or causes of action because they share a common nucleus of operative facts.**

The Eighth Circuit has interpreted the "same claims or causes of action" requirement to mean "claims that arise out of the same nucleus of operative facts." *Regions Bank v. J.R. Oil Co.*, 387 F.3d 721, 732 (8th Cir. 2004); *see also, e.g., Banks v. Int'l Union Elec., Elec., Tech., Salaried & Mach. Workers*, 390 F.3d 1049, 1052 (8th Cir. 2004) ("[A] claim is barred by res judicata if it arises out of the same nucleus

---

[39] *Satanic Temple I*, No. 19-cv-01122, ECF.10 ¶ 1.

[40] *Satanic Temple I*, No. 19-cv-01122, ECF.64-1 ¶ 8(7) (proposed amended complaint); ECF.1 ¶ 6(6) (new complaint).

of operative facts as the prior claim." (quotation omitted)); *Ruple v. City of Vermillion, S.D.*, 714 F.2d 860, 861 (8th Cir. 1983) ("[T]he phrase 'cause of action' or 'claim,' the term now favored by most courts, has been given a more practical construction. . . . [I]f a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, . . . the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata."), *cert denied*, 465 U.S. 1029 (1984); *Poe*, 695 F.2d at 1106 (adopting common-nucleus-of-operative-facts test to determine whether claims are the same).

As a result, a plaintiff cannot escape res judicata by fashioning a new theory of recovery or citing a new body of law that was arguably violated by a defendant's conduct; "res judicata will still bar the second claim if it is based on the same nucleus of operative facts as the prior claim." *Lane*, 899 F.2d at 744; *see also Rousseau*, 2005 WL 226167, at *3 (rejecting argument that merely adding a claim to a new complaint is sufficient to avoid res judicata and noting that under the "transactional approach" to res judicata, "there may be some variance in the proof required for claims that are nonetheless the same claim" (quotation omitted).

To determine whether the fourth requirement for res judicata is met, a court "examines whether the second lawsuit is part of the transaction, or series of connected transactions, out of which the first action arose." *First Nat'l Bank in Sioux Falls v. First Nat'l Bank S.D.*, 679 F.3d 763, 767 (8th Cir. 2012) (quotation

omitted); *see also Poe*, 695 F.2d at 1105–07. A court should make its determination "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Banks*, 390 F.3d at 1052 (quotation omitted). Ultimately, the test is "whether the wrong for which redress is sought is the same in both actions." *Costner*, 153 F.3d at 674 (quotation and emphasis omitted).[41]

Here, the Temple asserts only claims that it could have asserted in the first lawsuit. Revealingly, the Temple **did** assert most of its claims here in the first lawsuit. Of the eight claims in the new complaint, six were asserted in the *Satanic Temple I* original complaint, proposed amended complaint, or both.[42] The two additional claims in the new complaint are that the City violated "Minnesota's Establishment Clause" and the equal-protection guarantees in the Minnesota Constitution.[43] These claims under the state constitution are based on the same

---

[41] The Eighth Circuit has sometimes compared the new complaint to the proposed amended complaint in the earlier action—and has sometimes compared the new complaint to the original complaint in the earlier action. *Compare Landscape Props.*, 127 F.3d at 682–83, *with Daley v. Marriott Int'l, Inc.*, 415 F.3d 889, 896 (8th Cir. 2005). Here, all three complaints obviously are based on the same nucleus of operative facts.

[42] *See* ECF.1 (new complaint); *Satanic Temple I*, No. 19-cv-01122, ECF.1 (original complaint), ECF.64-1 (proposed amended complaint).

[43] ECF.1 ¶¶ 264–68 (Count 5), 281–83 (Count 7).

allegations as the claims under the analogous provisions of the federal constitution.[44]

The claims in the new complaint, in the original complaint in *Satanic Temple I*, and in the proposed amended complaint in *Satanic Temple I* all arise from a related set of facts and the same allegations—namely, the City's creation of a limited public forum through the Enacting Resolution, the City's issuance of permits, and the City's decision to close the forum through the Rescinding Resolution. These facts form a cohesive unit. Indeed, the Temple admits that "[t]he core factual allegations are still the same."[45] *Satanic Temple I* and this case are the same for purposes of res judicata.

* * * *

This action is barred by res judicata. Dismissal with prejudice is therefore warranted. *E.g.*, *Dumont v. Saskatchewan Gov't Ins.*, 258 F.3d 880, 885, 888 (8th Cir. 2001) (affirming dismissal with prejudice based on res judicata); *Crystal Import Corp.*, 582 F. Supp. 2d at 1172 (dismissing complaint with prejudice where all requirements of res judicata were met).

---

[44] *Compare* ECF.1 ¶¶ 253–63 (Count 4), *with id.* ¶¶ 264–68 (Count 5), *and id.* ¶¶ 269–80 (Count 6), *with id.* ¶¶ 281–83 (Count 7).

[45] ECF.1 ¶ 1.

II.     **In the alternative, the new complaint fails to state a claim upon which relief can be granted.**

A.     **The free-speech claim (Count 1) fails because the Rescinding Resolution is reasonable and viewpoint neutral.**

In an attempt to support its free-speech claim under the United States Constitution, the Temple makes sweeping allegations about the motives of individual council members. But this Court already held that "statements by the Council Members regarding the intent of rescinding Resolution 17-020 . . . are insufficient, as this Court must consider only the *nature* of the act after stripping it of 'all considerations of intent and motive.'" *Satanic Temple I*, 475 F. Supp. 3d at 958 (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998)). In response to that clear statement of law, the Temple has doubled down on the same flawed legal theory.

The Temple's additional factual allegations about the motives of individual council members[46] continue to be insufficient to state a free-speech claim. This is because "[t]he Free Speech Clause only forbids Congress and the States from making laws abridging the freedom of speech—a far different proposition than prohibiting the intent to abridge such freedom." *Sons of Confederate Veterans, Va.*

---

[46] ECF.1 ¶ 6(2) (stating that the new complaint "[i]dentifies the fact and timing of publicly available statements which show the City's highest-elected officials had a conscious purpose of promoting Christianity by enacting Resolution 17-020 and had a conscious purpose of discouraging Satanism by enacting Resolution 17-090").

*Div. v. City of Lexington*, 722 F.3d 224, 231 (4th Cir. 2013) (quotation omitted).
"Furthermore, we are governed by laws, not by the intentions of legislators." *Id.*
(quotation omitted).

Additionally, even if the proposed allegations about "the adverse public
reaction to the City's permission for [the Temple] to place a Satanic monument"[47]
were true, "[t]he City was entitled to listen to the public and to enact ordinances
that are constitutional in text and in operation, and that are supported by the
electorate." *Sons of Confederate Veterans*, 722 F.3d at 231; *see also id.* at 232–33
(upholding ban on the private use of state flagpoles, apparently enacted as a direct
response from a pro-Confederate group); *cf. Knights of Columbus, Council No. 94 v.
Town of Lexington*, 272 F.3d 25, 35 (1st Cir. 2001) (finding no free-exercise
violation although a regulation limiting unattended displays on the town green
was adopted in response to a flood of religious groups seeking to erect displays).
Indeed, the Supreme Court has clearly stated that the First Amendment is not
violated by a decision to close a formerly limited public forum "simply because its
enactment was motivated by the conduct of the partisans on one side of a debate is
without support." *Hill v. Colorado*, 530 U.S. 703, 724 (2000).

Here, the resolutions themselves are the objective manifestation of the
City's motives and the text of the resolutions are generally applicable and

---

[47] ECF.1 ¶6(4).

nondiscriminatory in their effects. In granting the City's motion to dismiss the Temple's free-speech claims, this Court wrote that the Temple "alleges no facts demonstrating that Resolution 17-090 did not apply equally to all entities seeking to erect a display or that [the Temple] was the only organization excluded from displaying a monument in Veterans Memorial Park." *Satanic Temple I*, 475 F. Supp. 3d at 961. In the new complaint, the Temple again does not allege that the Rescinding Resolution itself was unreasonable and not viewpoint neutral.[48] Nor could it plausibly do so. This Court already held that "the resolution applies equally to all entities that sought to erect a display in Veterans Memorial Park." *Satanic Temple I*, 475 F. Supp. 3d at 963.

The Temple's free-speech claim fails to contend with this Court's previous order stating that "Belle Plaine's decision to rescind Resolution 17-020 and thereby close the limited public forum does not give rise to a First Amendment challenge." *Id.* at 961. The Court was clear then, and the Temple has not alleged any facts that would change that analysis now.

---

[48] *See* ECF.1 ¶¶ 228–39.

**B.** **The free-exercise claims (Count 2 and Count 3) fail because neither the Enacting Resolution nor the Rescinding Resolution substantially burdens the Temple's religious practice and because the resolutions are neutral and generally applicable without regard to religion.**

### 1. Federal

The Temple appears to challenge both the Enacting Resolution and the Rescinding Resolution. The Temple alleges that the requirements for applicants to obtain a display permit under the Enacting Resolution (such as obtaining an insurance policy) were burdensome.[49] And the Temple alleges that both the Enacting Resolution and the Rescinding Resolution prevented it from being able to "present a competing viewpoint" to the display erected by the Belle Plaine Veterans Club.[50] These allegations fail to state a free-exercise claim.

To successfully plead and prove a free-exercise violation of the First Amendment to the United States Constitution, the Temple "must establish that the governmental activity at issue places a substantial burden on its religious practice." *Satanic Temple I,* 475 F. Supp. 3d at 959 (citing *Patel v. U.S. Bureau of Prisons,* 515 F.3d 807, 813 (8th Cir. 2008)). Free exercise of religion is substantially burdened when a regulation "significantly inhibit[s] or constrain[s] conduct or expression that manifests some central tenet of a person's individual religious

---

[49] *See* ECF.1 ¶¶ 39, 80–82, 246.

[50] *See* ECF.1 ¶¶ 24 –45, 247.

beliefs; . . . meaningfully curtail[s] a person's ability to express adherence to his or her faith; or . . . den[ies] a person reasonable opportunity to engage in those activities that are fundamental to a person's religion." *United States v. Ali*, 682 F.3d 705, 709–10 (8th Cir. 2012) (quotation omitted). Here, the Temple fails to allege any constraint on either conduct or expression of a central tenet of its members' religious beliefs that would satisfy this standard.

Although the Temple alleges that installing its display was "an expression of its core religious beliefs,"[51] installing displays in public places is not one of the Seven Tenets or "core features" described in the new complaint.[52] Even if that were the case, there is no constitutional right to erect a private structure on public property. *See Knights of Columbus*, 272 F.3d at 33 (citing *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753 (1995)); *Am. Jewish Cong. v. City of Beverly Hills*, 90 F.3d 379, 384 (9th Cir. 1996) ("The City constitutionally could ban all unattended private displays in its parks." (citing *Capitol Square*, 515 U.S. at 783 (Souter, J. concurring))). The Free Exercise Clause does not include the right to use public property as a place of worship. *See Taylor v. City of Gary*, 233 F. App'x 561, 562 (7th Cir. 2007) (citing *Prater v. City of Burnside*, 289 F.3d 417, 427–28 (6th Cir. 2002)).

---

[51] ECF.1 ¶ 243; *see also id*. ¶ 245.

[52] *See* ECF.1 ¶ 11.

Moreover, both the Enacting Resolution and the Rescinding Resolution are neutral and generally applicable without regard to religion—that is, **all** permit applicants were subject to the requirements of the Enacting Resolution, and the Rescinding Resolution excludes **all** private displays. *See Satanic Temple I*, 475 F. Supp. 3d at 963 ("[T]he resolution applies equally to all entities that sought to erect a display in Veterans Memorial Park."); *see also Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2020 (2017) ("In recent years, when [the Supreme Court] has rejected free exercise clause challenges, the laws in question have been neutral and generally applicable without regard to religion.").

In addition, the Temple's argument that its members' religious beliefs compel it to "present its viewpoint wherever a government opens the door to religion"[53] cannot possibly be burdened by the City's exclusion of all private displays.[54] There are no longer any private displays for the Temple to "compete" against. *Satanic Temple I*, 475 F. Supp. 3d at 957 ("Before the passage of Resolution 17-090 on July 17, 2017, Belle Plain[e] Veteran[s] Club voluntarily removed its display from Veterans Memorial Park.").[55]

---

[53] ECF.1 ¶ 131; *see also id*. ¶¶ 128, 242.

[54] ECF.1 ¶¶ 198, 205, 209; ECF.1-1 (Ex. 16 at 3) (email from the Temple to the City stating that "[w]e would never want our monument standing alone on public property").

[55] The Temple's allegation that it lacked "even a moment of equal access" (Paragraph 247) to the limited public forum is disproved by the exhibits attached

The Temple's allegations do not establish that the governmental activity at issue places a substantial burden on its religious practice.

### 2. Minnesota

Although the Minnesota constitution affords "greater protection for religious liberties against governmental action than the first amendment of the federal constitution," *Hill–Murray Fed'n of Teachers v. Hill–Murray High Sch.*, 487 N.W.2d 857, 864–65 (Minn. 1992), the Temple's free-exercise claim under the Minnesota Constitution fails for the same reasons as its claim under the federal constitution.

The test for determining whether government action violates the Freedom of Conscience Clause of the Minnesota Constitution (Article I, Section 16) has four prongs: (1) whether the belief is sincerely held; (2) whether the state action burdens the exercise of religious beliefs; (3) whether the state interest is overriding or compelling; and (4) whether the state uses the least restrictive means. *State v. Hershberger*, 462 N.W.2d 393, 398 (Minn. 1990). "[T]hose challenging the application of a law have the burden of establishing that challenged provisions infringe on their religious autonomy or require conduct inconsistent with their

---

to the complaint. The City issued two permits under the Enacting Resolution for an identical one-year period. As this Court previously observed, "[t]he fact that the Belle Plaine Veterans Club erected its display earlier than TST is not alleged to have been in Belle Plaine's control." *Satanic Temple I*, 475 F. Supp. 3d at 963.

religious beliefs." *Edina Cmty. Lutheran Church v. State*, 745 N.W.2d 194, 204 (Minn. App. 2008), *review denied* (Minn. Apr. 29, 2008). "To constitute such a burden, the challengers must establish that the risk of interference with religious beliefs or practice is real and not remote." *Newstrand v. Arend*, 869 N.W.2d 681, 687 (Minn. App. 2015) (quotation omitted), *review denied* (Minn. Dec. 15, 2015). "Religious institutions can be required to comply with statutes of general application, and the focus is on whether compliance requires a change in religious conduct or philosophy." *Edina Cmty. Lutheran Church*, 745 N.W.2d at 204 (quotation omitted).

The Temple has not alleged that either the Enacting Resolution or the Rescinding Resolution—both of which apply generally to anyone wishing to place a display in the Park—required a change in the Temple's religious conduct or philosophy. Indeed, the City issued the Permit under the Enacting Resolution for the display the Temple wished to put in the Park. And (as mentioned above), because the Rescinding Resolution prohibited ***all*** private displays in the Park, it had no impact on the Temple's expression of any "core" religious belief through its plan to place a counter-display. The plain text of neither resolution burdens the exercise of religious beliefs, and the City's interest in maintaining safety, serenity, and decorum in the Park—among other interests stated in the text of the Rescinding Resolution—is compelling.

**C. The establishment claims (Count 4 and Count 5) fail because the City did not coerce the Temple (or anyone else) to engage in a religious observance and did not give preference to any religion or mode of worship.**

        **1. Federal**

The Temple's Establishment Clause claim fails because the Temple has not alleged that a temporary, private display with a cross on it somehow coerced any members of the Temple to engage in a religious observance. "Simply having religious content or promoting a message consistent with a religious doctrine does not run afoul of the Establishment Clause." *Van Orden v. Perry*, 545 U.S. 677, 690 (2005) (citing *Lynch v. Donnelly*, 465 U.S. 680, 687 (1984); *Marsh v. Chambers*, 463 U.S. 783, 792 (1983); *McGowan v. Maryland*, 366 U.S. 420, 437–40 (1961); and *Walz v. Tax Comm'n of City of New York*, 397 U.S. 664, 676–678, (1970)). Although government "may not coerce its citizens to support or participate in any religion or its exercise," *New Doe Child #1 v. United States*, 901 F.3d 1015, 1023 (8th Cir. 2018) (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 586 (2014) (plurality opinion)), offense does not equate to coercion. *Galloway*, 572 U.S. at 589. The Temple fails to allege that the City's actions coerced the Temple or anyone else to participate in any religion or its exercise. At most, the Temple alleges that one of its members (identified by a pseudonym, "Jane Doe") was offended by the display erected by the

Belle Plaine Veterans Club.[56] That is not sufficient to state a claim under the Establishment Clause.[57]

### 2. Minnesota

The Temple also asserts a claim under Article I, Section 16 of the Minnesota Constitution, alleging that the Enacting Resolution violated the prohibition against government giving preference to "any religious establishment or mode of worship" because the Belle Plaine Veterans Club was allowed to put a display in the Park.[58] This claim fails.

The Freedom of Conscience Clause of the Minnesota Constitution, in relevant part, "prohibits the establishment of religion or the giving of a preference

---

[56] *See* ECF.1 ¶¶ 31–33.

[57] The Temple's Establishment Clause claim also fails because the Temple has not pleaded sufficient facts to establish that it has standing to assert any claims on behalf of Doe. An association "has standing to bring suit on behalf of its members" only when three criteria are met: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Kuehl v. Sellner*, 887 F.3d 845, 851 (8th Cir. 2018). The proposed amended complaint does not allege how Doe would otherwise have standing to sue in her own right. *See, e.g.*, *Sierra Club v. Kimbell*, 623 F.3d 549, 556 (8th Cir. 2010) (listing three requirements for Article III standing as "injury in fact," "causal connection," and "a likelihood that the injury will be redressed by a favorable decision of the court" (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The proposed amended complaint also fails to make clear how the establishment-clause claim would not require the participation of Doe in the lawsuit.

[58] *See* ECF.1 ¶264.

to any religion or mode of worship." *Odenthal v. Minn. Conference of Seventh-Day Adventists*, 649 N.W.2d 426, 442 (Minn. 2002); *see* Minn. Const. art. I, § 16 ("[N]or shall . . . any preference be given by law to any religious establishment or mode of worship[.]"). Minnesota courts apply the standard from *Lemon v. Kurtzman*, 403 U.S. 602 (1971), to determine whether a law violates this prohibition. *See In re Rothenberg*, 676 N.W.2d 283, 292 (Minn. 2004). That is, the Enacting Resolution will survive the Temple's challenge if it: (1) has a secular purpose; (2) neither advances nor inhibits religion as its primary effect; and (3) does not foster excessive governmental entanglement with religion. *Id.* (citing *Lemon*, 403 U.S. at 612–13). Here, the Temple does not allege that the Enacting Resolution advances religion as its primary effect. Nor does it allege that the Enacting Resolution fosters excessive governmental entanglement with religion. At most, the Temple alleges that, under the Enacting Resolution, the City issued a permit for a display with a cross to be placed, temporarily, in the Park to honor and memorialize veterans. But the notion that the Enacting Resolution had a predominantly religious purpose[59] is fatally undercut by the text of the Enacting Resolution (which gives no preference to any religion or mode of worship) and by

---

[59] *See McCreary Cty. v. ACLU of Ky.*, 545 U.S. 844, 860 (2005) ("When the government acts with the ostensible and predominant purpose of advancing religion, it violates that central Establishment Clause value of official religious neutrality, there being no neutrality when the government's ostensible object is to take sides.").

the fact that the City approved multiple permits for different groups—including the Temple's own display, which the Temple says was intended to "counter" any display with Christian content.[60]

**D.    The equal-protection claims (Count 6 and Count 7) fail because the Enactment Resolution and Rescinding Resolution treated the Temple the same as any other individual or organization.**

**1.    Federal**

The Satanic Temple's equal-protection claim under the U.S. Constitution fails as a matter of law because the Temple has not plausibly alleged that the Enactment Resolution or the Rescinding Resolution treated the Temple differently than any other similarly situated individual or organization.

The threshold inquiry is whether the Temple "is similarly situated to any institution or person who allegedly received favorable treatment" under the Enactment Resolution or the Rescinding Resolution. *See Satanic Temple I*, 475 F. Supp. 3d at 962; *see also, e.g.*, *ARRM v. Piper*, 367 F. Supp. 3d 944, 958 (D. Minn. 2019) (Wright, J.) ("To state an equal-protection claim, a plaintiff must allege that the plaintiff was 'treated differently than other persons who were in all relevant respects similarly situated.'" (quoting *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 820 (8th Cir. 2011)); *Mitchell v. Dakota Cty. Soc. Servs.*, 357 F. Supp. 3d 891, 902 (D. Minn. 2019) (Wright, J.) ("Whether a plaintiff brings the claim as a

---

[60] *See* ECF.1 ¶¶ 131, 147, 242.

member of a protected class or as a class of one, the plaintiff must allege 'invidiously dissimilar' treatment relative to similarly situated persons." (quoting *Flittie v. Solem*, 827 F.2d 276, 281 (8th Cir. 1987))). This Court previously held that the Temple's original complaint "fail[ed] to allege any dissimilar treatment relative to similarly situated parties"—and nothing has changed here. *See Satanic Temple I*, 475 F. Supp. 3d at 962.

In its new complaint the Temple compares itself to the Belle Plaine Veterans Club and alleges that the City gave the other entity "favorable governmental treatment" based on religion.[61] But the Temple's own allegations elsewhere in the complaint undermine the plausibility of disparate treatment. Quite simply, the two City resolutions treated the Satanic Temple and the Belle Plaine Veterans Club *equally*. The City issued both permits on the same day, March 29, 2017.[62] The accompanying letters both stated that placement of the displays could be arranged once the limited public forum area was fully marked ("by April 3, 2017").[63] Both permits were cancelled by operation of the Rescinding Resolution on July 17, 2017. In other words, the City provided the Temple and its identified comparator with identical time windows in which their respective displays could be placed in the

---

[61] ECF.1 ¶ 280.

[62] ECF.1 ¶¶ 149–150; ECF.1-1 (Exs. 12, 13).

[63] ECF.1-1 (Exs. 12, 13).

Park. Neither the Rescinding Resolution nor the Enacting Resolution prevented the Temple from putting its own display in the Park while the display of the Veterans' Club was present. *See Satanic Temple I*, 475 F. Supp. 3d at 963 ("[T]hat the Belle Plaine Veterans Club erected its display earlier than TST is not alleged to have been in Belle Plaine's control."). Because the Temple has failed to plausibly allege that any similarly situated institution or person received favorable treatment under the Enacting Resolution or the Rescinding Resolution, its equal-protection claim fails.

Furthermore, the Temple's claim fails because it has not alleged (1) that the challenged resolutions are facially discriminatory or (2) that either resolution has both a discriminatory purpose and discriminatory impact. *See Satanic Temple I*, 475 F. Supp. 3d at 962–63; *see also Mitchell ex rel. X.M. v. Dakota Cty. Soc. Servs.*, 357 F. Supp. 3d 891, 902 (D. Minn. 2019) (Wright, J.) ("To state an equal-protection claim, a plaintiff must allege that a law is either discriminatory on its face or has both a discriminatory purpose and a discriminatory impact."). As this Court previously held, the Temple's conclusory allegations regarding motivation do not override the plain text of the resolutions (which apply equally to everyone) or change the fact that the impact of the resolutions on the Temple was the same as for anyone else. *Id.*

### 2. Minnesota

As with federal equal-protection claims, an equal-protection claim under the Minnesota Constitution[64] fails as a matter of law if the plaintiff was not treated differently from others to whom the plaintiff is "similarly situated in all relevant respects." *State v. Holloway*, 916 N.W.2d 338, 347 (Minn. 2018); *see also, e.g.*, *Johnson v. Cty. of Hennepin*, 915 N.W.2d 889, 894 (Minn. 2018) (holding that equal-protection claim failed to satisfy "similarly situated" threshold requirement and refraining from examining the challenged classification under any level of scrutiny); *Fosle v. Ritchie*, 824 N.W.2d 618, 621–22 (Minn. 2012) (same); *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 657 (Minn. 2012) (same); *State v. Cox*, 798 N.W.2d 517, 521 (Minn. 2011) ("[W]e have routinely rejected equal-protection claims when a party cannot establish that he or she is similarly situated to those whom they contend are being treated differently."). This claim fails because, as discussed earlier, the Temple has failed to plausibly allege that any similarly situated institution or person received favorable treatment under the Enacting Resolution or the Rescinding Resolution.

---

[64] Although the Minnesota Constitution does not use the phrase "equal protection," the Minnesota Supreme Court has recognized that the Minnesota Constitution embodies principles of equal protection synonymous to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See, e.g., In re Durand*, 859 N.W.2d 780, 784 (Minn. 2015).

### E. The due-process claim (Count 8) fails because the Temple lacks a protected interest and the City complied with its policy.

The Temple's due-process claim fails as a matter of law. As a threshold problem, the Temple did not apply for or receive the Permit. Reason Alliance did. Nevertheless, the Temple alleges that it had a right to be heard at a meaningful time and in a meaningful manner before the City could revoke the Permit.[65] This allegation of a violation of procedural due process[66] overlooks the plain language on the face of the Enacting Resolution:

> In the event the City desires to close the limited public forum or rescind this policy, the City, through its City Administrator, may terminate all permits by giving ten (10) days' written notice of termination to Owner, within which period the owner must remove their display from city property.[67]

In the Permit application, the applicant agreed to this limited-public-forum policy.[68] The City issued the Permit under this policy. The due-process claim fails because the Temple lacks a protected property interest and the City complied with its policy.

The Supreme Court of the United States has held that due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494

---

[65] ECF.1 ¶¶ 287–88.

[66] ECF.1 ¶ 294.

[67] ECF.1-1 (Ex. 7 ¶ 13).

[68] ECF.1-1 (Ex. 8 at pp. 24 of 152).

U.S. 113, 127 (1990). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Where no protected life, liberty, or property interest exists, there can be no due-process violation. *See Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997).

The Temple's conclusory allegation that the Permit was an entitlement[69] is not enough to state a due-process claim. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577. Minnesota law limits "the property rights that are entitled to due process to real property rights, final judgments, and certain vested statutory rights." *Schatz*, 811 N.W.2d at 658 (citing *In re Individual 35W Bridge Litig.*, 806 N.W.2d 820, 830–31 (Minn. 2011)). Accordingly, to assert a due-process claim, the Temple must allege what rules or understandings define its alleged entitlement. The Temple cannot do so because both the Enacting Resolution and the Permit issued under it are clear: the Permit was good for one year and was revocable with ten days' notice. In addition, the Permit allowed a display to be placed on ***public*** property. This is important here because "the government need not keep a limited forum

---

[69] ECF.1 ¶ 287.

open indefinitely." *Satanic Temple I*, 475 F. Supp. 3d at 961 (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)).

The other factual allegations in the new complaint directly undermine the Temple's conclusory allegation that it did not have notice and opportunity to be heard. According to the Temple, it received notice of the City's intention to consider eliminating the limited public forum on July 14, 2017—three days before the council meeting at which the City did exactly that.[70] The Temple therefore had both notice (via the July 14 communication from the City Administrator) and an opportunity to be heard (before or at the July 17 City Council meeting). The new complaint fails to state a due-process claim.

## CONCLUSION

Plaintiff's claims are barred by res judicata. Besides that, Plaintiff fails to state any claims for which relief may be granted. The City respectfully requests that the Court dismiss Plaintiff's complaint with prejudice.

---

[70] ECF.1 ¶ 289; ECF.1-1 (Ex. 24).

Dated: March 1, 2021                    **GREENE ESPEL PLLP**

                                         _s/ Monte A. Mills_
                                        Monte A. Mills, Reg. No. 030458X
                                        Katherine M. Swenson, Reg. No. 0389280
                                        222 S. Ninth Street, Suite 220
                                        Minneapolis MN 55402
                                        mmills@greeneespel.com
                                        kswenson@greeneespel.com
                                        (612) 373-0830

                                        Attorneys for Defendant