IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| The Satanic Temple, Inc.<br><br>Plaintiff,<br><br>v.<br><br>City of Belle Plaine, MN,<br><br>Defendant. | Case No. 21-CV-00336 (WMW/LIB)<br><br>**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |

## 1. Res judicata bars this suit.

Plaintiff disputes only one requirement of res judicata: the existence of a final judgment on the merits. The resolution of this motion therefore narrows to a single question: Was there a final judgment on the merits in *Satanic Temple I* for purposes of res judicata? Because the answer is *yes*, the Court should dispose of this case. *See Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948).

First, the Court should not be led astray by the argument that magistrate judges "lack the power to enter involuntary orders of dismissal."[1] In *Satanic Temple I*, the Article III judge—not the magistrate judge—dismissed Plaintiff's claims on the merits. 475 F. Supp. 3d. 950 (D. Minn. 2020). The magistrate judge denied Plaintiff's motion for leave to amend,[2] something well within his power.

---

[1] ECF.23 at 3.

[2] *Satanic Temple I*, No. 19-cv-01122, ECF.79.

28 U.S.C. § 636(b)(1)(A). Indeed, judges in this District have held that a magistrate judge's denial of leave to amend constitutes a final judgment on the merits for res judicata. *See Seenyur v. Van Coolidge*, No. 16-cv-3832, 2018 WL 400758, at *2 (D. Minn. Jan. 12, 2018); *Czech v. Unum Life Ins. Co.*, No. 09-1884, 2009 WL 5033961, at *2 (D. Minn. Dec. 15, 2009).

Plaintiff cites no case where a district court dismissed a plaintiff's claims on the merits, a magistrate judge later denied the plaintiff's motion for leave to amend, and the denial of leave to amend was held *not* to constitute a final judgment on the merits for res judicata. The City is aware of no such case.[3]

Second, the Court should reject the argument that res judicata does not apply because Plaintiff's claims were dismissed "without prejudice" in *Satanic Temple I*. Regardless of how it was labeled, this Court's dismissal was on the merits. The Court evaluated the City's motion for judgment on the pleadings by applying the same legal standard for a Rule 12(b)(6) motion to dismiss on the claims' substantive merits. 475 F. Supp. 3d at 957. And "it is well-established that a Rule 12(b)(6) dismissal is a 'judgment on the merits' for res judicata purposes unless the plaintiff is granted leave to amend or the dismissal is reversed on appeal." *United States v. Maull*, 855 F.2d 514, 516 n.3 (8th Cir. 1988); *see also, e.g.*,

---

[3] The cases Plaintiff cites regarding the magistrate judge's powers (ECF.23 at 3) neither mention res judicata nor state that a magistrate judge cannot hear and decide a motion for leave to amend.

*Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981). Here, Plaintiff was denied leave to amend, and the dismissal has not been reversed.

In *Kulinski v. Medtronic Bio-Medicus, Inc.*, which Plaintiff characterizes as controlling,[4] the Eighth Circuit recognized the distinction between dismissal for lack of jurisdiction and dismissal for failure to state a claim. The court explained that res judicata did not apply because the initial claim "was dismissed for lack of subject matter jurisdiction and was not on the merits." 112 F.3d 368, 373 n.3 (8th Cir. 1997) (citing *Johnson v. Boyd–Richardson Co.*, 650 F.2d 147, 148 (8th Cir. 1981) ("[W]hen a dismissal is for 'lack of jurisdiction,' the effect is not an adjudication on the merits, and therefore the *res judicata* bar does not arise.")). In making this distinction, *Kulinski* cited several cases, including *King v. Hoover Group, Inc.*, and *Carter v. Money Tree Co.*, that involved an adjudication on the merits in the first suit. *Id.* at 373.[5] Because *Kulinski* did not involve a dismissal on the merits, it does not control here. *See Crystal Import Corp. v. Avid Identification Sys., Inc.*, 582 F. Supp. 2d 1166, 1170 n.4 (D. Minn. 2008) (distinguishing *Kulinski* and applying res judicata). Instead, the cases involving a dismissal on the merits in the first suit control. *See King*, 958 F.2d at 222–23; *Carter*, 532 F.2d at 115.

---

[4] ECF.23 at 7.

[5] The City previously cited *King*, 958 F.2d 219, 222–23 (8th Cir. 1992), which cited *Carter*, 532 F.2d 113, 115 (8th Cir. 1976), for the proposition that "[i]t is well settled that denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading." ECF.12 at 14.

Plaintiff selectively quotes *Knox v. Lichtenstein*, 654 F.2d 19, 22 (8th Cir. 1981), which involved a Rule 41 dismissal—not a Rule 12 dismissal or a motion for leave to amend. The language omitted by Plaintiff's ellipsis[6] shows that res judicata is appropriate if a first suit was dismissed on the merits. The other cases Plaintiff cites are likewise unhelpful because they involve distinct circumstances—such as Rule 41 (*Semtek*) or dismissals for lack of jurisdiction (*Gerhardson*).

Plaintiff cannot escape the clear precedent that denial of a motion for leave to amend a complaint constitutes a final judgment on the merits for res judicata.

**2.  The recycled constitutional claims fail.**

Plaintiff's attempt to rescue its constitutional claims from dismissal fails to acknowledge this Court's previous order. Plaintiff continues to argue that the "Recission Resolution does *not* apply equally to all."[7] But that argument directly contradicts this Court's previous holding that "the resolution applies equally to all entities that sought to erect a display in Veterans Memorial Park." 475 F. Supp. 3d at 963. That holding dooms Plaintiff's constitutional claims here—just as it doomed the previous versions of those claims.

---

[6] ECF.23 at 5.

[7] ECF.23 at 12.

Plaintiff continues to assert that it "was treated differently from the Veteran's Group," and that both groups "are clearly similarly situated."[8] But, again, that assertion directly contradicts this Court's previous holding that Plaintiff's alleged facts failed to show "any dissimilar treatment relative to similarly situated parties." 475 F. Supp. 3d at 962. That the Veterans Club erected its display earlier than Plaintiff in the one-year period applying to both groups was not within the City's control. *Id.* at 963.[9] The facts have not changed since the Court's prior order.[10]

Plaintiff seemingly concedes that "there is no constitutional right to erect a private structure on public property."[11] Although Plaintiff attempts to change the subject back to "viewpoint discrimination,"[12] this Court already rejected the notion that the Rescinding Resolution was discriminatory. 475 F. Supp. 3d at 962. The Rescinding Resolution is neutral and generally applicable without regard to viewpoint or religion; it closed the limited public forum and excluded *all* private displays. *Id.* at 963.

---

[8] ECF.23 at 31.

[9] The Minnesota equal-protection claim fails just like the federal claim.

[10] ECF.1 ¶ 1 ("The core factual allegations are still the same[.]").

[11] ECF.23 at 21.

[12] ECF.23 at 21.

There is no dispute that the park was a "limited public forum" under the Enacting Resolution. *Id.* at 961. As a matter of law, the City was entitled to close the limited public forum. *Sons of Confederate Veterans v. City of Lexington*, 722 F.3d 224, 231 (4th Cir. 2013). Because the Constitution does not grant Plaintiff a right to erect its display on public land, Plaintiff's claims fail.[13]

**3.  The Minnesota constitutional claims fail.**

Plaintiff failed to meet its burden to establish that the Rescinding Resolution infringed on Plaintiff's religious autonomy or required conduct inconsistent with its members' beliefs. *In re Rothenberg*, 676 N.W.2d 283, 294 (Minn. 2004); *Edina Cmty. Lutheran Church v. State*, 745 N.W.2d 194, 204 (Minn. App. 2008).

Although the protections of the Minnesota Constitution may be greater than those of the federal constitution as to free exercise of religion, the Court should reject the implication that *any* infringement or interference, no matter how slight, is sufficient to state a claim. *See Hill-Murray Fed'n of Teachers v. Hill-Murray*

---

[13] Plaintiff repeatedly references comments by individual council members and the mayor. But this Court already held that "statements by the Council Members regarding the intent of rescinding Resolution 17-020 . . . are insufficient, as this Court must consider only the *nature* of the act after stripping it of all considerations of intent and motive." *Satanic Temple I*, 475 F. Supp. 3d at 958 (quotation omitted); *see also Flemming v. Nestor*, 363 U.S. 603, 617 (1960) ("Judicial inquiries into Congressional motives are at best a hazardous matter, and when that inquiry seeks to go behind objective manifestations it becomes a dubious affair indeed."); *Ambassador Books & Video, Inc. v. City of Little Rock*, 20 F.3d 858, 863 (8th Cir. 1994) (applying this principle to municipal ordinances).

*High School*, 487 N.W.2d 857, 866 (Minn. 1992) (holding that claimant failed to establish that "minimal interference excessively burdens their religious beliefs"); *see also Rooney v. Rooney*, 669 N.W.2d 362, 369–70 (Minn. App. 2003) (holding that statute did not "excessively burden" right to exercise religious beliefs); *Shagalow v. Minn. Dep't of Human Servs.*, 725 N.W.2d 380, 390–91 (Minn. App. 2006) (analyzing whether government action "sufficiently burdens" free exercise of religion).

The Court should also reject the argument that "[t]he Minnesota Free Exercise Clause removes neutrality as a defense."[14] Neither the constitutional provision Plaintiff cites nor the sole case it cites supports that assertion. To the contrary, Article I, Section 16, and *State v. Hershberger* show that a law of general applicability rooted in the governmental interests of peace or safety is constitutional. At most, they support the idea that the government's countervailing interests are more limited in the Minnesota context than in the federal context—not that the government lacks power to pass religiously neutral laws. *See Hershberger*, 462 N.W.2d 393, 397 (Minn. 1990); *see also Edina Lutheran*, 745 N.W.2d at 204 ("Religious institutions can be required to comply with statutes of general application[.]")

---

[14] ECF.23 at 21–22.

The Rescinding Resolution eliminated the possibility of any display that Plaintiff might want to counter with its own display. The cited complaint paragraphs[15] allege that the City thwarted Plaintiff's ability to install its display *alongside the Veterans' display*.[16] But the Rescinding Resolution terminated the limited public forum, foreclosing all private displays.

Plaintiff incorrectly asserts that "the Enacting Resolution granted a Christian monument exclusive access to the public sphere[.]"[17] To the contrary, the City approved multiple permits for different groups with identical one-year time windows. "[T]hat the Belle Plaine Veterans Club erected its display earlier than TST is not alleged to have been in Belle Plaine's control." *Satanic Temple I*, 475 F. Supp. 3d at 963.

The Court should reject the contention that the City "offers no interest to justify why it passed the Recission Resolution."[18] Plaintiff overlooks the resolution itself, which is the objective manifestation of the City's decision, and which stated that closing the forum was done to protect the "safety, serenity, and decorum" of the park, preserve law-enforcement resources, and protect the "public's health,

---

[15] ECF.23 at 43.

[16] ECF.1 ¶¶ 111–48, 243.

[17] ECF.23 at 30.

[18] ECF.23 at 34.

safety, and welfare."[19] Those interests are compelling. *See* Minn. Const. art. 1, § 16 (mentioning peace and safety).

4. **Plaintiff's procedural-due-process claim fails because Plaintiff did not own a "special-use permit" under Minnesota law and because the Rescinding Resolution is a legislative act applying equally to all.**

Grasping for a protected property interest to support its procedural-due-process claim, Plaintiff incorrectly asserts that the Permit is "a special use permit."[20] This new theory fails for reasons similar to the dismissed RLUIPA claim. This Court previously concluded that Plaintiff failed to identify "any zoning or landmarking law under which Belle Plaine acted," and failed to show that "Belle Plaine acted pursuant to any zoning or landmarking law." 475 F. Supp. 3d at 964–65. Because the City did not issue the Permit under any zoning law, it is not a special-use permit.

Special-use permits are zoning devices, *Amoco Oil Co. v. City of Minneapolis*, 395 N.W.2d 115, 117 (Minn. App. 1986), and are authorized under a municipality's general zoning authority to control land use, *Zylka v. City of Crystal*, 167 N.W.2d 45, 49 (Minn. 1969) (citing Minn. Stat. § 462.357). Municipalities have the power to zone and plan the use of land within their boundaries. *VanLandschoot v. City of*

---

[19] ECF.1-2 at 33 (Ex. 25).

[20] ECF.23 at 38. Plaintiff concedes that Reason Alliance—not the Satanic Temple—applied for and received the Permit. *Id.* at 38 n.1. Plaintiff cannot claim any property interest in something it neither applied for nor received.

9

*Mendota Heights*, 336 N.W.2d 503, 507 (Minn. 1983) (citing Minn. Stat. § 462.351). The Permit issued under the Enacting Resolution was not a zoning device to control land use. *Satanic Temple I*, 475 F. Supp. 3d at 964–65.

Plaintiff incorrectly contends that "the text of the Enacting Resolution is irrelevant."[21] But the Enacting Resolution set forth the requirements that applicants must meet to obtain a permit to place a display in the limited public forum. Absent compliance with the Enacting Resolution, no permit could be issued.[22] The Enacting Resolution was not only relevant, it was essential to any permit issued. The City lacked authority to issue a permit that failed to comply with the Enacting Resolution, which is the only policy authorizing the issuance of a permit in the first place.

The Enacting Resolution specifically reserved the City's right to close the limited public forum and terminate all permits.[23] Those terms were restated and

---

[21] ECF.23 at 39.

[22] ECF.1-1 at 19–21, 24; *Satanic Temple I,* No. 19-cv-01122, ECF.84-1 (Ex. 38). On February 21, 2017, the City Council adopted the Enacting Resolution. *Satanic Temple I*, 475 F. Supp. 3d at 956. Plaintiff incorrectly suggests it was adopted on February 6, 2021. ECF.23 at 19. Plaintiff also states that "Councilor Stier sought and received assurances that no Satanic monuments would go into the Park." *Id.* at 31. But a review of the meeting recording shows that Stier and the council received advice from the City Attorney that the government may not establish rules that prevent certain religions from speaking. ECF.1-2 at 44 (Feb. 6, 2017 Tr. at Clip 7, 51:27–52:11); *see also Satanic Temple I*, No. 19-cv-01122, ECF.96-1 at 3.

[23] ECF.1-1 at 21 ¶ 13.

attached to the permit application on a sheet that provided "Information and Requirements for Veterans Memorial Park Limited Public Forum Display Permit."[24] Each applicant was required to affirm that it would "comply with the Limited Public Forum Policy of the City."[25] The Enacting Resolution established that limited-public-forum policy.[26] The permit applicants received all the process that was due under the Enacting Resolution. The Rescinding Resolution eliminated the limited-public-forum policy that the Enacting Resolution had created. That was a legislative decision to end the limited-public-forum policy. *Satanic Temple I*, 475 F. Supp. 3d at 958 ("[T]he enactment by vote of Resolution 17-090, regardless of the Council's rationale, is a 'quintessentially legislative' function and an 'integral step[] in the legislative process.'").

Because the City closed the forum by legislative act, any procedural-due-process rights are minimal—if any exist at all. *See Foster v. Hughes*, 979 F.2d 130, 132 (8th Cir. 1992) ("Persons are entitled to procedural due process, in the form of an individual opportunity to be heard, only when the government makes an individualized determination, not when the government commits a legislative act equally affecting all those similarly situated."); *Packett v. Stenberg*, 969 F.2d 721,

---

[24] *Satanic Temple I*, No. 19-cv-01122, ECF.84-1 (Ex. 38 at 1).

[25] *See* ECF.1-1 at 24; *Satanic Temple I*, No. 19-cv-01122, ECF.84-1 (Ex. 38 at 3).

[26] ECF.1-1 at 19-21; *Satanic Temple I*, No. 19-cv-01122, ECF.84-1 (Ex. 38).

11

726 (8th Cir. 1992) ("[T]he legislative process itself provides citizens with all the process they are due"); *Collier v. City of Springdale*, 733 F.2d 1311, 1314 n.5 (8th Cir. 1984) ("The protections of procedural due process do not apply to legislative acts[.]"); *Allied Prof'ls, Inc. v. Malcolm*, No. 01-1534, 2001 WL 1640051, at *3 (D. Minn. Nov. 21, 2001) ("There is no constitutional right to be consulted when legislation which affects you is drafted."); *see also Minn. State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 283–84 (1984) (citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915)) ("The Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy."). The City Council's adoption of the Rescinding Resolution was a legislative act, and it "applies equally to all entities that sought to erect a display in Veterans Memorial Park." *Satanic Temple I*, 475 F. Supp. 3d at 958, 963. The procedural-due-process claim fails.

Although Plaintiff cites *Barton Contracting Co. v. City of Afton*, that decision does not support its argument. 268 N.W.2d 712 (Minn. 1978). *Barton* recognized that when government acts in a legislative capacity, any procedural-due-process rights in such proceedings are "minimal." *Id.* at 715–16. Further, *Barton* involved the distinct circumstance where the "governing body considers an application for a special-use permit" under a zoning ordinance. *Id.* at 716. Unlike *Barton*, here the City did not deny a permit application; rather, the City passed legislation ending

the authorization for all such permits. Moreover, *Barton* held that the denial of the permit was proper and that the plaintiff was not denied procedural due process. *Id.* at 716, 719.

Finally, Plaintiff alleges that "[t]he real determination to exclude TST was made at the secret Workshop meeting between the Council and the Veterans Group."[27] During the deposition of the City in *Satanic Temple I*, Plaintiff's counsel questioned the City's witness about a supposed secret workshop meeting and discovered that the City Council did not have a workshop meeting or other meeting on or about July 10, 2017.[28] Given this testimony, the Court should ask Plaintiff's counsel what evidentiary support exists for the allegation of a "secret

---

[27] ECF.23 at 41. Plaintiff alleges a July 10, 2017 meeting based on a June 30 email. ECF.1 ¶ 191 (citing ECF.1-2 at 11). Plaintiff also cites Complaint Exhibit 2 for evidence of an "off-the-record meeting with the Veterans Group," ECF.23 at 19–20, but that refers to a closed-session meeting of the City Council on January 3, 2017, before the Enacting Resolution even existed. The face of that document indicates who was present during the January 3 closed session. ECF.1-1 at 7. The listed attendees did *not* include representatives of the Veterans Group. Plaintiff goes on to argue that "[i]mmediately after that meeting, the City began coordinating its press release with its insurer about what would become the Recission Resolution." ECF.23 at 20. But the closed session referenced in Exhibit 2 was on January 3, 2017, and the Rescinding Resolution was not adopted until July 17, 2017. Plaintiff's citations to the record deserve scrutiny.

[28] Meyer Decl. ¶ 3 & Ex. A. "[C]ourts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting the Rule 12 motion into one for summary judgment." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quotation omitted).

Workshop meeting." In any event, the allegation is immaterial as a matter of law because the protections of procedural due process do not apply to legislative acts like the Rescinding Resolution, and "[t]here is no constitutional right to be consulted when legislation which affects you is drafted." *Allied Prof'ls*, No. 01-1534, 2001 WL 1640051, at *3. "There must be a limit to individual argument in such matters if government is to go on," and "no one would suggest that the 14th Amendment was violated unless every person affected had been allowed an opportunity to raise his voice against it before the body entrusted by the state Constitution with the power." *Bi-Metallic Inv. Co.*, 239 U.S. at 445.

## CONCLUSION

The City requests that the Court dismiss Plaintiff's complaint with prejudice.

Dated: March 29, 2021 **GREENE ESPEL PLLP**

 s/ *Katherine M. Swenson*
Monte A. Mills, Reg. No. 030458X
Katherine M. Swenson, Reg. No. 0389280
222 S. Ninth Street, Suite 220
Minneapolis MN 55402
mmills@greeneespel.com
kswenson@greeneespel.com
(612) 373-0830

Attorneys for Defendant