**Exhibit 1**
Deposition of Dawn Meyer

## Page 1

```
 1
 2          IN THE UNITED STATES DISTRICT COURT
 3                  DISTRICT OF MINNESOTA
 4   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
 5   THE SATANIC TEMPLE,          Case No. 19-CV-01122
                                              (WMW/LIB)
 6           Plaintiff,
 7   v.
 8   CITY OF BELLE PLAINE,
 9           Defendant.
     _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
10
11
12                   Deposition of
13          CITY OF BELLE PLAINE, MINNESOTA
14                     through
15                   DAWN MEYER
16            Monday, February 8, 2021
17                   9:57 a.m.
18
19
20
21
22
23
24          KATHRYN M. MOHAWK, RPR
25          ESQUIRE DEPOSITION SOLUTIONS
26
```

## Page 2

```
 1        Deposition of DAWN MEYER, taken pursuant to
 2   Notice and agreement of counsel, and taken before
 3   Kathryn M. Mohawk, Notary Public in and for the County
 4   of Anoka, State of Minnesota, via videoconference.
 5
 6             A P P E A R A N C E S
 7
 8        MATTHEW A. KEZHAYA, ESQUIRE, of the law
 9   firm of KEZHAYA LAW PLC, 1202 Northeast McClain Road,
10   Bentonville, Arkansas 72712,appeared for and on behalf
11   of the Plaintiff via videoconference.
12
13        MONTE A. MILLS, ESQUIRE, of the law firm of
14   GREENE ESPEL, PLLP, 222 South Ninth Street, Suite 2200,
15   Minneapolis, Minnesota 55402, appeared for and on
16   behalf of the Defendant via videoconference.
17
18
19
20
21
22
23
24
25
```

## Page 3

```
 1
 2                    I N D E X
 3
 4   EXAMINATION BY:                          PAGE
 5   Mr. Kezhaya ...................................... 5
 6
 7   EXHIBITS
 8   Exhibit No. 1 .................................... 9
         email 2/13/17 Votca to Ruud (1 page)
 9
     Exhibit No. 3 .................................... 8
10       TST application CITY000012 through 000015
         (4 pages)
11
     Exhibit No. 5 ................................... 11
12       letter 3/29/17 Votca to Reason Alliance
         CITY000011 (1 page)
13
     Exhibit No. 6 ................................... 15
14       email chain 6/29/17 CITY000044 through 000047
         (4 pages)
15
     Exhibit No. 7 ................................... 16
16       email chain 6/30/17 (2 pages)
17
18
19
20
21
22
23
24
25
```

## Page 4

```
 1            PROCEEDINGS
 2        THE REPORTER:  All parties stipulate and
 3   agree that the witness was identified as DAWN
 4   MEYER, and the witness's testimony will be treated
 5   as if the witness is under oath.  This deposition
 6   will be used for all purposes like other
 7   depositions.
 8          Counsel, can you please identify
 9   yourselves for the record; state who you represent;
10   name any other parties in attendance with you in
11   your location; and state on the record that you
12   agree to the stipulation, please.
13        MR. KEZHAYA:  This is Matt representing
14   the plaintiffs, The Satanic Temple.  There's a
15   little bit of feedback.  I agree to the
16   stipulation.  And no one else is in the room with
17   me.
18        MR. MILLS:  Good morning.  Monte Mills for
19   the City of Belle Plaine, and no one else is here
20   with me.
21        THE REPORTER:  And you agree to the
22   stipulation?
23        MR. MILLS:  Sure.  Never saw it before
24   this morning, but it's a deposition.  Let's
25   proceed.
```



Page 5

1
2          DAWN MEYER,
3  called as a witness, after having been duly sworn,
4  was examined and testified as follows:
5              EXAMINATION
6  BY MR. KEZHAYA:
7  Q. Please state your name for the record.
8  A. Dawn Meyer.
9  Q. And, Dawn, what is your role with the City?
10 A. Administrator.
11 Q. And what does an administrator do for the City?
12 A. In general terms, they manage the office and follow
13    policy as set by city council.
14 Q. Okay. Do you serve as the chief executive for the
15    City?
16 A. City government doesn't set chief executives, but I
17    -- There is no other position staff-wise above my
18    position.
19 Q. Okay. Do you report directly to the council?
20 A. I do.
21 Q. Okay. Are they -- For all intents and purposes,
22    are they your bosses?
23 A. Yes.
24 Q. Okay. Is yours an elected position?
25 A. No.

Page 6

1  Q. Okay. Do you have any relationship with Mayor
2     Meyer?
3           MR. MILLS: Objection: This is beyond the
4     scope. We're here for a 30(b)(6) deposition of the
5     City. There are five topics. It's time to start
6     addressing the five topics.
7           MR. KEZHAYA: We're going to get there
8     shortly. Please answer the question.
9           MR. MILLS: Nope. Moving on to the five
10    topics, please.
11          MR. KEZHAYA: I'm going to certify this as
12    an issue for the Court for sanctions.
13 Q. Let's move on to the five topics then. At some
14    point, the City enacted the Enacting Resolution; is
15    that correct?
16 A. Correct.
17 Q. Okay. What happened between then and the time that
18    people started introducing the applications?
19 A. Can you be more specific?
20 Q. Yeah. How did you go about implementing it as a
21    City?
22 A. The resolution enacting the limited forum area was
23    approved. The City created the space in the park
24    as directed and created a -- or not created -- they
25    started accepting permits.

Page 7

1  Q. Okay. Were there any internal guidelines created
2     to determine whether an application would meet the
3     resolutions or not?
4  A. The resolution along with the permit which was
5     approved at the time of enactment was the guiding.
6  Q. Okay. Were there any meetings to determine whether
7     applications would be accepted or not?
8  A. No.
9  Q. Who made the decision on whether an application
10    would be approved or denied?
11 A. The city administrator.
12 Q. Okay. At the time, was that you?
13 A. No.
14 Q. Okay. That was Mike Votca?
15 A. Michael Votca.
16 Q. Okay. Did he consult with anyone, or was it
17    entirely up to his discretion?
18 A. As per the policy, it was the administrator's
19    discretion.
20 Q. Okay. At some point, y'all received an application
21    from TST; is that correct?
22 A. I believe the permit was from -- It did not state
23    TST. It was --
24 Q. Okay. But you -- Sorry. Go ahead.
25 A. -- Reason Alliance.

Page 8

1  Q. Okay. But you knew it was coming from The Satanic
2     Temple, didn't you?
3  A. I believe they had their name on that permit as
4     well.
5  Q. Okay. I'm going to turn your attention to Exhibit
6     3, Deposition Exhibit 3.
7           MR. KEZHAYA: Katie, do I show it on my
8     screen; or do you show it on yours?
9           THE REPORTER: You, please.
10 Q. Okay. Can you all see my PDF reader here?
11 A. I do not see it.
12 Q. Okay. How about now?
13 A. Yes.
14 Q. Okay. So this is Exhibit 3. The City produced
15    this as City Bates stamps 12, 13, 14, and looks
16    like 15.
17          MR. MILLS: Excuse me. But when you're
18    speaking in terms of deposition exhibits, I don't
19    think this is Deposition Exhibit 3.
20          MR. KEZHAYA: I promise you that this is
21    Deposition Exhibit 3. I've just designated it as
22    such.
23          MR. MILLS: Oh, for this deposition or --
24          MR. KEZHAYA: Correct.
25          MR. MILLS: -- for the prior depositions?



Page 9

1       MR. KEZHAYA: For this deposition.

2       MR. MILLS: I misunderstood. I thought

3 you were using the exhibit numbers from the

4 previous depositions in this case. That's often

5 what people do. I apologize for the confusion. So

6 for this deposition this is a --

7       MR. KEZHAYA: This is Deposition Exhibit

8 3.

9 Q. Dawn, please answer the question.

10 A. I didn't get a question. I apologize.

11 Q. The question is, do you recognize this as TST's

12    application?

13 A. I recognize this application listing the Reason

14    Alliance with a c/o The Satanic Temple, yes.

15 Q. Sorry. I didn't catch that last part of the

16    question. You said with a c/o of The Satanic

17    Temple?

18 A. It says c/o or care of on the --

19 Q. Oh, I see.

20 A. -- The Satanic Temple, correct.

21 Q. Okay. The City expected an application from The

22    Satanic Temple, didn't they?

23 A. No.

24 Q. No? I'm going to turn your attention to Deposition

25    Exhibit 1. This is an email dated February 13th

Page 10

1 from Michael Votca to Dan Ruud. Do you recognize

2 this email? Dawn, do you recognize this email?

3 A. Yes.

4 Q. Okay. I'm going to turn your attention to -- Let's

5    see. Well, I'll just read the whole thing into the

6    record.

7      Since we don't have an official policy yet, we

8 have no official requests. I received a letter

9 from the Vets Club saying that they want to erect a

10 display. The FFRF indicated in their letter that

11 they wanted to put up a display. I also received a

12 short message from someone stating that they were

13 from a satanic temple. When I returned the call,

14 no one answered; and they have not called back. I

15 have an email message from a citizen asking to see

16 the policy once it's approved so that they might

17 place a display.

18      What was the nature of this message from The

19    Satanic Temple?

20 A. I have no knowledge of that information.

21 Q. You have no knowledge of it?

22 A. No record.

23 Q. Okay. February 13th was before the enacting policy

24    was created; is that right?

25 A. Correct.

Page 11

1 Q. Okay. So after this application was submitted, at

2    some point Mike approved it; is that right?

3 A. Correct.

4 Q. Do you know the time difference between the

5    application and the approval?

6 A. I would need to refer to the file.

7 Q. Okay. I'm going to turn your attention to the

8    City's Exhibit -- or sorry -- Deposition Exhibit

9    5. This is the permit in question; is that right?

10 A. Correct.

11 Q. So March 29 the permit was granted. Turning back

12    to 3, February 23 it was sent. Do you know when

13    you guys received it, the application?

14 A. There is no received stamp.

15 Q. Okay. So approximately one month goes by between

16    the application being sent and the application

17    being approved. What happened during that time

18    frame?

19 A. The City was preparing an area for the limited

20    public forum.

21 Q. Okay. What did that entail?

22 A. It entailed marking out an area, lining it with

23    pavers, placing a sign as required.

24 Q. Okay. You mentioned something about pavers. Were

25    there spots designated for these monuments?

Page 12

1 A. There was an area in the park designated. It was

2    marked off by pavers.

3 Q. Maybe I'm not understanding what you're saying

4    then. What is a paver?

5 A. A small brick-like product.

6 Q. Okay. So how were these things marked off? Was it

7    the area as a whole, or were there individual plots

8    that got marked off?

9 A. An area as a whole.

10 Q. Okay. Was Mike personally the one that set those

11    down?

12 A. No.

13 Q. Okay. So was there anything else that happened in

14    this one-month period?

15 A. Specifically to create --

16 Q. Specifically with respect to evaluating this

17    application or implementing the policy.

18 A. They would have been measuring the area. They used

19    aerials to determine the specifics. And they had

20    to dig into the ground to place them as well as

21    ordering a sign.

22 Q. Who is they?

23 A. Public works and the administrator worked together.

24 Q. Okay. And public works was headed up by who?

25 A. Alan Fahey is the public works superintendent.



Page 13

1  Q. Okay. Did the city council have any involvement on
2     the approval of this application?
3  A. No.
4  Q. Did they have any involvement on whether it should
5     be approved?
6  A. No.
7  Q. Did any city council members object to TST's
8     application?
9  A. No.
10 Q. Okay. What all meetings took place that surrounded
11    TST's application?
12 A. None.
13 Q. There were no meetings whatsoever about TST's
14    application?
15 A. No.
16 Q. Okay. Are you familiar with the city council
17    meetings in 2017?
18 A. Yes.
19 Q. There was a June meeting where a priest came in and
20    objected to TST's application, wasn't there?
21       MR. MILLS: Objection: This is beyond the
22    scope of the deposition. There are five topics
23    listed. The original -- Well, I'll just stop there
24    for now. This is beyond the scope.
25       MR. KEZHAYA: This is on point 3. Answer

Page 14

1     the question, please.
2        MR. MILLS: I'm going to object. This is
3     beyond the scope. Your original --
4        MR. KEZHAYA: This is falling very clearly
5     under the meetings and participants --
6        MR. MILLS: I'm not done. I'm not done.
7     Counsel, I'm not --
8        MR. KEZHAYA: I don't care if you're done,
9     Monte.
10       MR. MILLS: The original deposition --
11       MR. KEZHAYA: Are we going to call the
12    judge right now?
13       MR. MILLS: The original deposition notice
14    included a statement about the City's
15    communications with Father Brian Lynch. It also
16    included various other topics about protests, about
17    TST's display, and all these other topics. The
18    Court's order said that each of those plaintiff's
19    noticed Rule 30 deposition topics are not relevant
20    to any claims or defenses in this case, and the
21    plaintiff shall not inquire into such topics --
22       (Background noise.)
23    -- during the Rule 30(b)(6) --
24    I just want to know whether the court reporter
25    was able to get my objection on the record.

Page 15

1        THE REPORTER: Most of it. When the
2     background started coming in, I --
3        MR. MILLS: Yeah. Mr. Kezhaya -- Let the
4     record reflect that Mr. Kezhaya is interfering with
5     my objections.
6        (Mr. Kezhaya on the telephone.)
7        (Off the record.)
8        THE REPORTER: I don't know what just
9     happened there, but it wasn't on the record. And
10    what you want on the record, guys, you have to
11    speak one at a time because -- Well, you get it.
12       MR. KEZHAYA: That's fine.
13       MR. MILLS: Yeah. I definitely do get it,
14    Katie.
15       MR. KEZHAYA: I'm going to move to the
16    next topic.
17 BY MR. KEZHAYA:
18 Q. So there was a meeting in July that the City hosted
19    about TST's monument; isn't that the case?
20       MR. MILLS: Objection. This is beyond the
21    scope of the deposition --
22       MR. KEZHAYA: Please answer the question.
23 A. Can you be more specific, please.
24 Q. So I'm going to turn your attention to Deposition
25    Exhibit 6. On June 29th, TST notified it looks

Page 16

1     like your predecessor that the monument was ready
2     to be installed. Were you aware of this?
3  A. Yes.
4  Q. Okay. And you actually responded to Malcolm saying
5     that it couldn't be arranged for until July 6; is
6     that right?
7  A. Correct.
8  Q. What was your -- What was your role at this time?
9  A. I was serving as an acting administrator in the
10    absence of the administrator.
11 Q. Okay. And so you sent an email to Chris Meyer
12    shortly after responding to Malcolm; is that right?
13    This would be the email in question.
14       (Referencing Exhibit No. 7.)
15 A. Yep. I'm just refreshing my memory. Yes.
16 Q. Okay. And Mayor Meyer responded the next morning
17    asking you to set up a workshop session with the
18    council and the veterans for July 10th, right?
19 A. Correct.
20 Q. Okay. Did you, in fact, set up that workshop
21    session?
22 A. There was no council workshop scheduled on July
23    10th.
24 Q. Okay. So you responded that you'll work on getting
25    it set up and posted. We see this on Exhibit 7,



Page 17

1    right?
2            MR. MILLS: Objection: This is beyond the
3    scope.
4            MR. KEZHAYA: This is meetings, Monte.
5    I've heard your objection. Please answer the
6    question.
7            MR. MILLS: This is beyond -- Meetings
8    constituting the internal decision making about
9    plaintiff's request.
10           MR. KEZHAYA: Yes. This would fall very
11   cleanly under that. Dawn, please answer the
12   question.
13           MR. MILLS: I'll allow this one to proceed
14   with that clarification.
15   A. I'm sorry. Can you repeat the question?
16   Q. Did you, in fact, set up a workshop session?
17   A. We did not have a public meeting or the workshop
18       session.
19   Q. Okay. What is a workshop session?
20   A. It's a public meeting with the council as a whole
21       to review City business.
22   Q. Okay. You said you didn't have a public meeting.
23       Was there a private meeting?
24   A. No.
25   Q. Okay. Was any number of city council members

Page 18

1    meeting on July 10th?
2    A. Not to my knowledge.
3    Q. Okay. After this -- Well, what was the nature of
4        telling Malcolm that this installation process
5        would have to wait until July 6th?
6    A. If you refer to the email --
7    Q. Uh-huh.
8    A. -- the installation was coordinated through our
9        public work superintendent who manages all City
10       property, and he was out of the office until that
11       date.
12   Q. Okay. Was that the only reason?
13   A. Yes.
14   Q. Okay. Between, looks like, June 30 and about July
15       13, Mr. Fahey was coordinating with Malcolm on
16       installing the monument; is that right?
17   A. Al Fahey was out of the office when I responded to
18       that.
19   Q. Uh-huh.
20   A. So he would have been coordinating when he
21       returned.
22   Q. Correct. So between -- call it July 6 and July 13,
23       he was coordinating with Malcolm to find a date to
24       install the monument. Right?
25           MR. MILLS: So I'll object. The scope of

Page 19

1    this deposition specifically approved by the Court
2    was the City's communications with TST between
3    January 1, 2017, and July 1, 2017. If you're
4    asking for something regarding the City's
5    communications after July 1, 2017, it's beyond the
6    scope of what the Court ordered this deposition
7    would be about.
8            MR. KEZHAYA: All right. Well, Dawn, I
9    think that's all the time we have for you today.
10   Thank you so much for your time. And we'll be
11   talking to you soon.
12           THE WITNESS: Thank you.
13           MR. MILLS: We'll read and sign, please,
14   Katie.
15           THE REPORTER: Sure. Copy of the
16   transcript? What type of copy? Do you want an
17   electronic PDF or something hard copy?
18           MR. MILLS: Yes. An electronic PDF would
19   be fine, Katie. Thank you.
20           THE REPORTER: Sure. And, Mr. Kezhaya, an
21   original copy, hard copy original?
22           MR. KEZHAYA: Just a PDF for me, please.
23           THE REPORTER: Just a PDF. No hard copy
24   original?
25           MR. KEZHAYA: Please.

Page 20

1            THE REPORTER: Very good. Thank you.
2            (The deposition was concluded at 10:20
3    a.m.)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Page 21**

1

2 STATE OF MINNESOTA)

3 COUNTY OF ANOKA)

4

5 I, Kathryn M. Mohawk, the undersigned, a duly

6 commissioned and qualified notary public within and for

7 the County and State aforesaid, do hereby certify that

8 before the giving of her deposition, DAWN MEYER was by

9 me first duly sworn upon her oath to depose the whole

10 truth and nothing but the truth; that the foregoing is

11 a true and correct copy of my original stenotype notes

12 taken at said deposition; that I am neither a relative

13 of nor attorney for any of the parties to the cause and

14 have no interest whatsoever in the result of the same;

15 that the cost of the original has been charged to the

16 party who noticed the deposition, and that all parties

17 who ordered copies have been charged at the same rate

18 for such copies.

19 WITNESS MY HAND AND SEAL this 11th day of

20 February, 2021.

21

22 _____

   KATHRYN M. MOHAWK

23

24

25

**Page 22**

1 DEPOSITION OF DAWN MEYER, 2/8/21

  REPORTED BY KATHRYN M. MOHAWK, RPR

2

           CORRECTION SHEET

3 PAGE #   LINE #   CORRECTION   REASON

4 _____

5 _____

6 _____

7 _____

8 _____

9 _____

10 _____

11 _____

12 _____

13 _____

14 _____

15 _____

16 _____

17 _____

18 _____

19 _____

20 _____

21 _____

22 _____

23 _____

24 _____

25 _____

**Page 23**

1 Reference No.: 6618740

2

3 Case: SATANIC TEMPLE vs BELLE PLAINE

4

      DECLARATION UNDER PENALTY OF PERJURY

5

6 I declare under penalty of perjury that

  I have read the entire transcript of my Depo-

  sition taken in the captioned matter or the

7 same has been read to me, and the same is

  true and accurate, save and except for

8 changes and/or corrections, if any, as indi-

  cated by me on the DEPOSITION ERRATA SHEET

9 hereof, with the understanding that I offer

  these changes as if still under oath.

10

11 _____

12 Dawn Meyer

13

14 NOTARIZATION OF CHANGES

15 (If Required)

16

17 Subscribed and sworn to on the _____ day of

18

19 _____, 20____ before me,

20

21 (Notary Sign)_____

22

23 (Print Name)                Notary Public,

24

25 in and for the State of _____

**Page 24**

1 Reference No.: 6618740

  Case: SATANIC TEMPLE vs BELLE PLAINE

2

3 Page No._____Line No._____Change to:_____

4 _____

5 Reason for change:_____

6 Page No._____Line No._____Change to:_____

7 _____

8 Reason for change:_____

9 Page No._____Line No._____Change to:_____

10 _____

11 Reason for change:_____

12 Page No._____Line No._____Change to:_____

13 _____

14 Reason for change:_____

15 Page No._____Line No._____Change to:_____

16 _____

17 Reason for change:_____

18 Page No._____Line No._____Change to:_____

19 _____

20 Reason for change:_____

21 Page No._____Line No._____Change to:_____

22 _____

23 Reason for change:_____

24

25 SIGNATURE:_____DATE:_____

   Dawn Meyer



Page 25

```
 1   Reference No.: 6618740
     Case:  SATANIC TEMPLE vs BELLE PLAINE
 2
 3   Page No._____Line No._____Change to:_____
 4   _____
 5   Reason for change:_____
 6   Page No._____Line No._____Change to:_____
 7   _____
 8   Reason for change:_____
 9   Page No._____Line No._____Change to:_____
10   _____
11   Reason for change:_____
12   Page No._____Line No._____Change to:_____
13   _____
14   Reason for change:_____
15   Page No._____Line No._____Change to:_____
16   _____
17   Reason for change:_____
18   Page No._____Line No._____Change to:_____
19   _____
20   Reason for change:_____
21   Page No._____Line No._____Change to:_____
22   _____
23   Reason for change:_____
24
     SIGNATURE:_____DATE:_____
25   Dawn  Meyer
```

