UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| The Satanic Temple, | Case No. 19-cv-1122 (WMW/JFD) |
| Plaintiff, | |
| | **ORDER** |
| v. | |
| City of Belle Plaine, Minnesota, et al., | |
| Defendants. | |

---

| | |
|---|---|
| The Satanic Temple, Inc., | Case No. 21-cv-0336 (WMW/JFD) |
| Plaintiff, | |
| | **ORDER** |
| v. | |
| City of Belle Plaine, MN, | |
| Defendant. | |

---

In these two related matters, Plaintiff The Satanic Temple (TST) alleges that Defendant City of Belle Plaine, Minnesota (Belle Plaine), violated its rights under federal law, the United States Constitution, and the Minnesota Constitution and should be held liable under the doctrine of promissory estoppel. In TST's first-filed case, this Court dismissed TST's constitutional and statutory claims for failure to state a claim on which relief can be granted. *See Satanic Temple v. City of Belle Plaine* (*Satanic Temple I*), 475 F. Supp. 3d 950 (D. Minn. 2020). In *Satanic Temple I*, Belle Plaine now moves for summary judgment as to TST's remaining promissory-estoppel claim. TST opposes Belle Plaine's motion and appeals the magistrate judge's January 26, 2021 Order, which

denied in part TST's motion to compel discovery, denied TST's motion to amend the pretrial scheduling order, and denied TST's motion for leave to amend its complaint to re-assert its dismissed constitutional claims and add new constitutional claims.

After the magistrate judge denied TST's motion to amend its complaint in *Satanic Temple I*, TST commenced a second lawsuit on February 4, 2021. *See Satanic Temple, Inc. v. City of Belle Plaine* (*Satanic Temple II*), No. 21-cv-0336, Dkt. 1 (D. Minn. Feb. 4, 2021). In *Satanic Temple II*, TST asserts the same constitutional claims that TST unsuccessfully attempted to assert in its proposed amended complaint in *Satanic Temple I*. Belle Plaine moves to dismiss TST's complaint in *Satanic Temple II*, arguing that the claims are barred by res judicata based on *Satanic Temple I* and, in the alternative, the complaint fails to state a claim on which relief can be granted. Belle Plaine also moves for sanctions against TST's counsel, arguing that the filing of *Satanic Temple II* is a frivolous attempt to circumvent the rulings in *Satanic Temple I* and waste judicial resources.

For the reasons addressed below, Belle Plaine's motions for summary judgment, dismissal, and sanctions are granted and the January 26, 2021 Order is affirmed.

## BACKGROUND

On February 21, 2017, the Belle Plaine City Council enacted Resolution 17-020, titled "ESTABLISHING A POLICY REGARDING A LIMITED PUBLIC FORUM IN VETERANS MEMORIAL PARK" (the Enacting Resolution). In relevant part, the Enacting Resolution provides:

[T]he Council wishes to allow private parties access to Veterans Memorial Park for the purpose of erecting displays in keeping with the purpose of honoring and memorializing veterans . . . .

. . .

1. The City designates a limited public forum in Veterans Memorial Park for the express purpose of allowing individuals or organizations to erect and maintain privately owned displays that honor and memorialize living or deceased veterans, branch of military and Veterans organizations affiliated with Belle Plaine. . . .

. . .

9. The requesting party and not the City shall own any display erected in the limited public forum. The display must have liability coverage of $1,000,000 . . . .

. . .

13. In the event the City desires to close the limited public forum or rescind this policy, the City, through its City Administrator, may terminate all permits by giving ten (10) days' written notice of termination to [the] Owner, within which period the owner must remove their display from city property.

On February 23, 2017, TST submitted an application to erect a display in Belle Plaine's Veterans Memorial Park pursuant to the Enacting Resolution. TST received a permit on March 29, 2017. The Belle Plaine Veterans Club also obtained a permit under the Enacting Resolution to erect a display. On June 29, 2017, TST notified the City Administrator that its memorial monument was complete. TST spent "substantial sums

3

in the design and construction of its display" and acquired liability insurance as required by the Enacting Resolution.

On July 17, 2017, Belle Plaine rescinded the Enacting Resolution by enacting Resolution 17-090, titled "RESCINDING THE POLICY AND ELIMINATING THE LIMITED PUBLIC FORUM IN VETERANS MEMORIAL PARK" (the Rescission Resolution).  In relevant part, the Rescission Resolution provides:

> The policy established in Resolution 17-020 is rescinded and the limited public forum established in the Park is hereby eliminated.  Private displays or memorials placed in the Park shall be removed within a reasonable period by the owner thereof or, upon notice to such owner, or they will be deemed abandoned and removed by the City.

The next day, Belle Plaine notified TST by letter that the Belle Plaine City Council adopted the Rescission Resolution and enclosed a check reimbursing TST for its permit-application fee.  As a result of the Rescission Resolution, TST never erected its display.  Belle Plain Veteran's Club voluntarily removed its display from Veterans Memorial Park before Belle Plaine enacted the Rescission Resolution.

## I.     TST's First Lawsuit: *Satanic Temple I*

On April 25, 2019, TST commenced its first lawsuit against Belle Plaine, *Satanic Temple I*.[1]  The complaint in *Satanic Temple I* alleges that Belle Plaine violated TST's rights under federal law, the United States Constitution, and the Minnesota Constitution

---

[1]     TST also sued Belle Plaine Mayor Christopher Meyer and four members of the Belle Plaine City Council.

and should be held liable under the doctrine of promissory estoppel.[2]  In a July 31, 2020 Order, this Court dismissed TST's constitutional and statutory claims without prejudice for failure to state a claim on which relief can be granted.  *Satanic Temple I*, 475 F. Supp. 3d at 966.  As a result, only TST's promissory-estoppel claim remains.

In December 2020, TST moved to compel discovery and amend the pretrial scheduling order.  TST also sought leave to amend its complaint to re-assert the constitutional claims that the Court had dismissed and to assert new constitutional claims. In a January 26, 2021 Order, the magistrate judge denied in part TST's motion to compel discovery and denied TST's motion to amend.  The magistrate judge concluded that TST had not demonstrated good cause to amend the pretrial scheduling order, which required any motion to amend the pleadings to be filed no later than October 15, 2019.  The magistrate judge also concluded that TST had not demonstrated good cause to amend the complaint, observing that TST "does not allege any 'new' facts [that] could not have with due diligence been asserted in its original Complaint."  In addition, the magistrate judge concluded that TST's proposed amended claims are futile because they fail to correct the deficiencies previously identified by the Court when dismissing TST's constitutional claims.

Belle Plaine moves for summary judgment in *Satanic Temple I* as to TST's promissory-estoppel claim.  TST opposes summary judgment and also appeals the magistrate judge's January 26, 2021 Order denying TST's motion to amend.

---

[2]     TST also alleged, but voluntarily dismissed, three contract-related claims in *Satanic Temple I*.

## II.    TST's Second Lawsuit: *Satanic Temple II*

On February 4, 2021, after the magistrate judge denied TST's motion to amend in *Satanic Temple I*, TST filed a second lawsuit against Belle Plaine, *Satanic Temple II*. The eight-count complaint in *Satanic Temple II* alleges that Belle Plaine violated TST's rights to free speech, free exercise of religion, equal protection, and due process under the United States Constitution and the Minnesota Constitution.   Belle Plaine moves to dismiss TST's complaint in *Satanic Temple II*.   Belle Plaine argues that TST's claims in *Satanic Temple II* are barred by res judicata and, in the alternative, fail to state a claim on which relief can be granted.   Belle Plaine also moves for sanctions against TST's counsel, arguing that the filing of *Satanic Temple II* is a frivolous attempt to circumvent the rulings in *Satanic Temple I* and waste judicial resources.

## ANALYSIS

## I.    Belle Plaine's Motion for Summary Judgment (*Satanic Temple I*)

Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When deciding a motion for summary judgment, a district court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor.  *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03

(8th Cir. 2014).  When asserting that a fact is genuinely disputed, the nonmoving party

must "submit affidavits, depositions, answers to interrogatories, or admissions on file and

designate specific facts" in support of that assertion.  *Gander Mountain Co. v. Cabela's,*

*Inc.*, 540 F.3d 827, 831–32 (8th Cir. 2008); *see also* Fed. R. Civ. P. 56(c)(1)(A).  A

nonmoving party may not "rest on mere allegations or denials but must demonstrate on

the record the existence of specific facts which create a genuine issue for trial." *Krenik v.*

*County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted).

Belle Plaine moves for summary judgment as to TST's remaining promissory-

estoppel claim in *Satanic Temple I*.  Promissory estoppel permits courts to enforce a

promise on equitable grounds even if the parties did not enter into a contract.  *City of*

*St. Joseph v. Sw. Bell Tel.*, 439 F.3d 468, 477 (8th Cir. 2006).  To prevail on its

promissory-estoppel claim under Minnesota law, TST must prove three elements: (1) the

promisor made a clear and definite promise, (2) the promisor intended to induce reliance

and such reliance occurred, and (3) the promise must be enforced to prevent an injustice.

*Hous. & Redevelopment Auth. of Chisholm v. Norman*, 696 N.W.2d 329, 336 (Minn.

2005).  The Court addresses each element in turn.[3]

---

[3]      As an initial matter, TST argues that Belle Plaine has not laid foundation for
Exhibits 4, 5, 8, and 33–45 that Belle Plaine filed in support of its motion for summary
judgment and moves to strike these exhibits.  TST also moves to strike a declaration
Belle Plaine filed with its reply brief.  TST is correct that, "[t]o be considered on
summary judgment, documents must be authenticated by and attached to an affidavit
made on personal knowledge setting forth such facts as would be admissible in
evidence." *DG & G, Inc. v. Flexsol Packaging Corp. of Pompano Beach*, 576 F.3d 820,
825–26 (8th Cir. 2009) (internal quotation marks omitted).  But here, TST's argument
lacks merit.  Exhibits 4, 5, and 8 are copies of the city resolutions and the permit that are

### A.   Promise

The first element that TST must prove to prevail on its promissory-estoppel claim is that Belle Plain made a clear and definite promise to TST.  *Id.*  It is undisputed that the alleged promise in this case arises from the permit that Belle Plaine issued to TST on March 29, 2017, and *not* Belle Plaine's passage of the Enacting Resolution on February 21, 2017.

A clear and definite promise "require[s] that the promisor should reasonably expect to induce action or forbearance on the part of the promisee."  *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000).  Minnesota has adopted the Restatement (Second) of Contracts with respect to promissory estoppel.  *See Walser v. Toyota Motor Sales, U.S.A., Inc.*, 43 F.3d 396, 400–01 (8th Cir. 1994) (citing *Christensen v. Minneapolis Mun. Emps. Ret. Bd.*, 331 N.W.2d 740, 749 (Minn. 1983)).  Under the

---

the basis for TST's claims, exhibits to TST's complaint, and relied on by TST as well. Exhibits 33 and 34 are TST's discovery responses.  As to the other eleven challenged exhibits, Belle Plaine filed with its reply brief the declaration of Belle Plaine's City Administrator, authenticating these exhibits.  A district court "has broad discretion in permitting supplementation of the summary judgment record" and "has discretion whether to accept or reject untimely filed materials."  *See id.* at 826 (internal quotation marks omitted).  Many courts have permitted subsequently filed affidavits to remedy previously filed unsworn materials.  *See, e.g.*, *id.* (finding that the district court did not abuse its discretion by permitting a party to supplement the summary judgment record with an affidavit that cured a previously unsworn expert report); *Skrovig v. BNSF Ry. Co.*, 855 F. Supp. 2d 933, 936 (D.S.D. 2012) (considering expert witness reports initially filed without affidavits when plaintiffs later submitted sworn affidavits from the two expert witnesses with the original reports attached); *Maytag Corp. v. Electrolux Home Prods., Inc.*, 448 F. Supp. 2d 1034, 1064 (N.D. Iowa 2006) ("[S]ubsequent verification or reaffirmation of an unsworn expert's report, either by affidavit or deposition, allows the court to consider the unsworn expert's report on a motion for summary judgment."). Moreover, the analysis that follows does not rely on most of the exhibits that TST challenges.  For these reasons, TST's motion to strike is denied.

Restatement, a "promise" is defined as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made."  Restatement (Second) of Contracts § 2(1) (Am. L. Inst. 1981).  When a promise is accompanied by a legal duty to perform, the promise creates a contract.  *Id.* cmt. a.  But when a contract having legal effect does not exist, as is the case with respect to promissory estoppel, a "promise" refers to a "promisor's words or acts of assurance, including the justified expectations of the promisee."  *Id.*

Belle Plaine argues that the March 29, 2017 permit it issued to TST is not a clear and definite promise because Belle Plaine reserved the right to terminate the limited public forum in Veterans Memorial Park at any time.  Under the Restatement, when an alleged promisor's performance is "entirely optional," such an "illusory promise" falls outside the Restatement's definition of a promise.  *Id.* cmt. e.  Thus, "[e]ven if a present intention is manifested, the reservation of an option to change [the promisor's] intention means that there can be no promisee who is justified in an expectation of performance."  *Id.*

Here, the permit that Belle Plaine issued to TST includes both a cover letter and a copy of the permit application reflecting its approval as of March 29, 2017.  The cover letter does not reference the Enacting Resolution or Belle Plaine's right to terminate the limited public forum, but provides as follows:

> The City of Belle Plaine has approved your request for a permit to emplace a display within the Limited Public Forum at Veterans Memorial Park.  As a reminder, the display must be placed by the owner of the display under the supervision of

> the public works department.  The limited public forum area
> will be fully marked by April 3, 2017.  Once the area is
> marked, we will be ready to supervise placement.   Please
> make contact with me via e-mail . . . or by phone . . . to
> arrange a time for placement.   All displays must be marked
> with a visible name of the owner and the permit number.
> Your permit number Is LPF 17-02. This permit is good for
> one year from the date of this letter.   You may reapply to
> place another display once the display under this permit is
> removed.  Please contact me if you have any questions.

In the approved permit application, however, TST acknowledged that it would "comply

with the Limited Public Forum Policy of the City of Belle Plaine," which undisputedly is

a reference to the Enacting Resolution.[4]  It also is undisputed that, under Resolution 17-

020, Belle Plaine reserved the option to terminate all permits pertaining to the limited

public forum:

> In the event the City desires to close the limited public forum
> or rescind this policy, the City, through its City
> Administrator, may terminate all permits by giving ten (10)
> days' written notice of termination to [the] Owner, within
> which period the owner must remove their display from city
> property.

Notably, however, although Belle Plaine reserved the right to close the limited public

forum and terminate all permits, Belle Plaine manifested its intent to do so only "by

---

[4]      TST argues that the permit application and its reference to the Enacting Resolution
are not a part of the permit.   TST appears to contend that the terms of Belle Plaine's
alleged promise are limited to the four corners of the one-page cover letter approving
TST's permit request.   But the evidence reflects otherwise.   The cover letter includes
"reminder[s]" about the permit requirements without detailing every requirement, and the
cover letter encloses the permit application with notations reflecting its approval on
March 29, 2017, including the city administrator's signature.   To the extent that the
permit represents a clear and definite promise, the permit application is a part of the
permit.

giving ten (10) days' written notice of termination."  Thus, the permit does *not* make Belle Plaine's performance an "entirely optional . . . illusory promise."  *See* Restatement (Second) of Contracts § 2 cmt. e.   Rather, by issuing TST a permit, Belle Plaine manifested its intent to allow TST to place a display in Veterans Memorial Park for up to a year *and* to provide TST ten days' notice if Belle Plaine decided to terminate the permit early, thereby implicitly guaranteeing TST a period of *at least* ten days to place its display in Veterans Memorial Park.

According to Belle Plaine, TST's witnesses testified at their depositions that they understood that Belle Plaine could close the limited public forum or rescind the policy at any time with ten days' written notice and that there were no limits on Belle Plaine's right to do so.  These facts may be undisputed, but they are immaterial to whether Belle Plaine's performance was optional or illusory.  Although Belle Plaine had a right to rescind the policy, it nonetheless manifested an intent to do so *only* after providing ten days' written notice.  Thus, Belle Plaine's performance was not entirely optional.

A promise is clear and definite if "the promisor should reasonably expect to induce action or forbearance on the part of the promisee."  *Martens*, 616 N.W.2d at 746. On this record, a jury reasonably could find that Belle Plaine's permit to TST conveyed a promise—namely, to allow TST an opportunity to place a display in Veterans Memorial Park for at least ten days and up to a year, and to provide TST ten days' notice if the permit would be terminated before March 29, 2018.  And a jury could find that Belle Plaine should reasonably have expected such a promise to induce action on the part of

TST—namely, expending time, money, and effort constructing a display and transporting it to Veterans Memorial Park.

For these reasons, genuine disputes of material fact exist as the first element of TST's promissory-estoppel claim.

### B.    Reliance

The second element that TST must prove to prevail on its promissory-estoppel claim is that Belle Plaine intended to induce TST to rely on Belle Plaine's promise and that such reliance in fact occurred. *Hous. & Redevelopment Auth.*, 696 N.W.2d at 336. In addition, "such reliance must have occurred to [TST's] detriment." *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 391 (Minn. 1992).

It is undisputed that Belle Plaine granted TST a permit "to emplace a display within the Limited Public Forum at Veterans Memorial Park." The permit also expressly invited TST to contact the city administrator "to arrange a time for placement" of TST's display. A jury reasonably could infer from these facts that Belle Plaine intended for TST to rely on Belle Plaine's promise by undertaking efforts to place a display in Veterans Memorial Park.

To prove the reliance element of its promissory-estoppel claim, however, TST also must prove that it detrimentally relied on Belle Plaine's promise. *Cohen*, 479 N.W.2d at 391. TST contends that it detrimentally relied on Belle Plaine's promise by "expending time, effort, and expense to create a monument [that] is not fulfilling its purpose." Both of TSTs directors testified, however, that TST contacted an artist in February 2017 and

expressed interest in commissioning the construction of a monument *before* TST obtained a permit to display it in Veterans Memorial Park and *regardless* of whether Belle Plaine voted to establish a limited public forum in Veterans Memorial Park. Although TST disputes whether it knew, at that time, that Belle Plaine would be establishing a limited public forum, this dispute is immaterial. The relevant "promise" on which TST allegedly relied is the March 29, 2017 permit. The undisputed evidence establishes that TST expressed interest in commissioning the construction of a monument, and began expending efforts toward that goal, more than a month before TST obtained the permit. TST could not have relied on a promise that had not yet been made.

TST contends that it only began the process of creating a *design* for its monument in February 2017—a necessary predicate for its permit application—and that TST did not begin the process of *constructing* the monument until April 13, 2017, which was two weeks after TST received the permit. Belle Plaine counters that TST had other motives for proceeding with the construction of its monument and, therefore, the monument would have been constructed regardless of whether a permit had been granted. These contentions present a genuine dispute of material fact as to whether Belle Plaine's permit—as opposed to other motivating factors—induced TST to proceed with the construction of its monument.

These contentions do not, however, present a genuine dispute of material fact as to whether TST relied on the permit *to its detriment*. As addressed above, a jury reasonably could find that Belle Plaine's permit to TST conveyed a promise—namely, to give TST

an opportunity to place a display in Veterans Memorial Park for at least ten days, and to provide TST ten days' notice if the permit would be terminated before March 29, 2018. A jury also reasonably could find that TST relied on this promise when it continued the process of constructing its monument. But for several reasons, the undisputed facts demonstrate that Belle Plaine *fulfilled* its promise and that TST received the benefit of that promise.

First, TST contends that it expended time, effort, and expense creating a monument that it would not have created but for Belle Plaine's promise to allow the monument to be displayed in Veterans Memorial Park. But the permit did not promise to reimburse TST for the time, effort, and expense of creating a monument. It was understood that those expenses would be borne by TST.[5] Moreover, the undisputed evidence reflects that TST received monetary and in-kind contributions that exceeded the expenses associated with creating TST's monument.[6]

---

[5]     Although TST paid a fee to obtain the permit, it is undisputed that Belle Plaine reimbursed that fee when it terminated the permit early.

[6]     TST asserts that it suffered reputational harm by soliciting contributions for a monument that was never displayed as intended. But TST's complaint does not allege reputational harm and TST provides no evidence to support this assertion. Indeed, TST relies solely on the testimony of one of its directors, who expressed his admittedly "speculative" opinion that TST's reputation had been harmed. TST argues that donors entrusted TST with their donations based on an expectation that TST's monument would be displayed in Veterans Memorial Park, and TST's "status in its community has been lowered" because Belle Plaine broke its promise. But Belle Plaine provided TST a limited-time opportunity to display its monument, and TST failed to do so during that time. To the extent that TST represented to donors that it would have a guaranteed, unfettered opportunity to display its monument for an entire year, TST misrepresented the scope of its permit.

TST also contends that its monument "is not fulfilling its purpose" because the monument is not being displayed in Veterans Memorial Park. But there is no evidence that Belle Plaine promised an indefinite opportunity for TST to display its monument. Instead, the permit provided a limited-time opportunity—at least ten days, but no more than a year—for TST to display a monument. TST received that opportunity but failed to take advantage of it. Specifically, pursuant to the permit, TST had the opportunity to place its monument in Veterans Memorial Park beginning on April 3, 2017. The permit remained effective for nearly four months, during which time TST could have—but did not—place a monument in Veterans Memorial Park. TST understood that its permit would expire after one year and could be terminated at any earlier time with ten days' notice. As such, TST could not have reasonably relied on an expectation that Belle Plain would *guarantee* TST the opportunity to display its monument for a full year. Yet TST did not utilize the permit before Belle Plaine provided the requisite notice of the permit's termination on July 18, 2017.[7]

In summary, the undisputed evidence demonstrates that TST did not *detrimentally* rely on Belle Plaine's permit.

---

[7]    Although Belle Plaine's July 18, 2017 letter to TST does not expressly reference the ten days' notice, the letter includes a copy of the Rescission Resolution, which provides that private displays "shall be removed within a reasonable period by the owner thereof." There is no allegation or evidence that Belle Plaine failed to give the requisite ten days' notice.

### C.     Injustice

Even if TST could establish detrimental reliance, to prevail on its promissory-estoppel claim TST also must prove that Belle Plaine's alleged promise must be enforced to prevent an injustice. *Hous. & Redevelopment Auth.*, 696 N.W.2d at 336.  This element "is a legal question for the court." *Cohen*, 479 N.W.2d at 391.  The issue "is not whether the promise should be enforced to do justice, but whether enforcement is required to prevent an injustice." *Id.*  "Numerous considerations enter into a judicial determination of injustice, including the reasonableness of a promisee's reliance and a weighing of public policies in favor of both enforcing bargains and preventing unjust enrichment." *Faimon v. Winona State Univ.*, 540 N.W.2d 879, 883 (Minn. Ct. App. 1995).

Here, as addressed, TST received the benefit of Belle Plaine's alleged promise: TST had a limited-time opportunity, for nearly four months, to display its monument in Veterans Memorial Park.  That Belle Plaine terminated TST's permit early was both authorized by the Enacting Resolution and understood by TST as a possibility when TST applied for a permit.  Any contrary expectation held by TST when relying on Belle Plaine's alleged promise would have been unreasonable.  There also is no allegation or evidence that Belle Plaine was unjustly enriched.  The only money Belle Plaine received from TST was a $100 permit fee, which Belle Plaine reimbursed to TST.  In addition, as addressed, the evidence reflects that TST was not financially harmed and there is no evidence of reputational harm.

In summary, because TST lacks evidence to support two essential elements of its promissory-estoppel claim, Belle Plaine's motion for summary judgment is granted.

## II.     TST's Appeal of the January 26, 2021 Order (*Satanic Temple I*)

TST appeals the magistrate judge's January 26, 2021 Order in *Satanic Temple I*, which denied in part TST's motion to compel discovery, denied TST's motion to amend the pretrial scheduling order, and denied TST's motion for leave to amend its complaint to re-assert its dismissed constitutional claims and add new constitutional claims.

When reviewing an appeal of a magistrate judge's ruling on a nondispositive issue, the standard of review is "extremely deferential." *Scott v. United States*, 552 F. Supp. 2d 917, 919 (D. Minn. 2008). A magistrate judge's nondispositive ruling will be modified or set aside only if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); LR 72.2(a)(3); *Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007). A ruling is clearly erroneous when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Wells Fargo & Co. v. United States*, 750 F. Supp. 2d 1049, 1050 (D. Minn. 2010) (internal quotation marks omitted). When a court "fails to apply or misapplies relevant statutes, case law or rules of procedure," its decision is contrary to law. *Id.* (internal quotation marks omitted).

Here, the magistrate judge determined that the discovery TST sought in its motion to compel is irrelevant to TST's promissory-estoppel claim. In addition, the magistrate judge determined that TST had not demonstrated good cause either to amend the scheduling order or to file an amended complaint more than one year after the court-

ordered deadline to do so. The magistrate judge also concluded that, even if TST had demonstrated good cause to amend the complaint, its proposed amendments would be futile. The Court reviews each conclusion in turn.

### A. TST's Motion to Compel

TST challenges the magistrate judge's partial denial of TST's motion to compel discovery. Among other things, TST sought to depose Belle Plaine's mayor, city council members, and city attorney. TST asserted that the purpose of this discovery was to determine Belle Plaine's motives for adopting the Enacting Resolution and the Rescission Resolution. The magistrate judge denied these aspects of TST's motion to compel, concluding that the discovery TST sought has no relevance to TST's promissory-estoppel claim.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Such information need not be admissible. *Id.* Rule 26 "is to be construed broadly and thus encompasses 'any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.' " *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1027 (D. Minn. 1997) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Although "[b]road discovery is an important tool for the litigant," *Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*, 784 F.3d 1183, 1198 (8th Cir. 2015), a district court has the discretion to limit discovery if the court determines that the burden of the discovery

sought outweighs its benefit, *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2003). And courts have "considerable discretion in determining the need for, and form of, discovery." *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 120 F. Supp. 3d 942, 949 (D. Minn. 2015).

Here, the magistrate judge correctly concluded that the discovery TST sought has no relevance to TST's promissory-estoppel claim. As addressed above, the elements of a promissory-estoppel claim are: (1) the promisor made a clear and definite promise, (2) the promisor intended to induce reliance and such reliance occurred, and (3) the promise must be enforced to prevent an injustice. *Hous. & Redevelopment Auth.*, 696 N.W.2d at 336. As the magistrate judge correctly reasoned, the motivations of the alleged promisor have no bearing as to any of these elements.

According to TST, Belle Plaine's allegedly discriminatory motivations are relevant to the third element—whether Belle Plaine's promise must be enforced to prevent an injustice. But TST misconstrues the scope of the "injustice" element. Minnesota law recognizes promissory estoppel as "an equitable form of action based on good-faith reliance." *Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 152 (Minn. 2001). When evaluating the "injustice" prong in the promissory-estoppel context, courts consider "the reasonableness of a promisee's reliance" and assess "public policies in favor of both enforcing bargains and preventing unjust enrichment." *Faimon*, 540 N.W.2d at 883. In the promissory-estoppel context, the "injustice" that courts aim to prevent pertains to enforcing promises and vindicating the promisee's reliance, not

preventing broader societal injustices that might exist beyond the promise and reliance factors at issue.  *See id.* at 883 n.2.  Here, as addressed above, TST has not established that it detrimentally relied on Belle Plaine's alleged promise.  And Belle Plaine's motivations—discriminatory or not—are not germane to whether Belle Plaine conveyed a promise or whether TST reasonably or detrimentally relied on that promise.  Belle Plaine's motivations are similarly irrelevant to whether enforcing the promise is necessary to prevent an injustice.

For these reasons, the magistrate judge's partial denial of TST's motion to compel discovery is neither clearly erroneous nor contrary to law.

### B.    TST's Motion to Amend the Pretrial Scheduling Order

TST also challenges the magistrate judge's denial of TST's motion to amend the pretrial scheduling order.  The magistrate judge concluded that TST had not demonstrated good cause to amend the pretrial scheduling order.

In most cases, a district court is required to issue a scheduling order that "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions."  Fed. R. Civ. P. 16(b)(3)(A).  A party that seeks to modify a scheduling order must demonstrate good cause to do so.  Fed. R. Civ. P. 16(b)(4); LR 16.3(b)(1).  "The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements.  *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (internal quotation marks omitted).

Here, the magistrate judge issued the pretrial scheduling order on August 15, 2019.  Pursuant to the pretrial scheduling order, the deadline for motions to amend the pleadings was October 15, 2019; the deadlines for expert disclosures were June 30, 2020, and August 31, 2020; and the deadline for discovery was December 4, 2020.  TST did not move to amend the scheduling order until the close of discovery on December 4, 2020.

The magistrate judge found that TST had not shown diligence in either attempting to comply with the existing deadlines or seeking an amendment of those deadlines.  The record supports this finding.  Indeed, TST waited until October 15, 2020, to serve its first set of discovery requests.  TST did not seek to amend the expert disclosure deadline until several months *after* that deadline had passed.  And TST did not seek to amend its complaint until nearly fourteen months after the deadline to amend pleadings had passed.  The magistrate judge rejected TST's contention that extra time was necessary to accommodate TST's replacement of counsel, observing that TST's current counsel appeared in this case in February 2020.  The magistrate judge also rejected TST's argument that the four months between this Court's July 31, 2020 Order and the December 4, 2020 discovery deadline was an insufficient amount of time to obtain evidence necessary to prove one promissory-estoppel claim.

TST contends that its delays "are justifiable in light of the fact that discovery requests take time to create, which competed with undersigned Counsel's other cases."  This argument is unpersuasive.  After the Court's July 31, 2020 Order, only one claim remained: TST's promissory-estoppel claim.  At that time, TST already had access to

some of the evidence it relies on to support that claim, including its own records, publicly available records, and documents TST obtained through a government-data request before commencing this lawsuit. Moreover, TST's argument does not explain why TST waited until the close of discovery to seek extensions, including an extension of the expert disclosure deadline that had passed several months earlier.

TST also argues that its delays are justifiable because Belle Plaine "refused to provide discovery on a number of issues surrounding [Belle Plaine's] motivation behind breaking its promise." As addressed above, such discovery is irrelevant to TST's promissory-estoppel claim. And Belle Plaine's purported refusal to provide discovery does not explain why TST waited more than two months to serve discovery in the first place and waited four months to seek to amend the scheduling order and complaint.

Accordingly, the magistrate judge's conclusion that TST failed to show good cause to amend the pretrial scheduling order is neither clearly erroneous nor contrary to law.

### C.     TST's Motion to Amend the Complaint

The magistrate judge also concluded that TST failed to show good cause to amend the complaint more than a year after the deadline to do so had passed and that TST's proposed amended complaint is futile. The Court reviews each conclusion in turn.

### 1.     Good Cause

Leave to amend a pleading should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). There is not an absolute right to amend a complaint, however, and a

motion to amend may be denied based on a finding of "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Doe v. Cassel*, 403 F.3d 986, 990–91 (8th Cir. 2005) (internal quotation marks omitted). Moreover, "when a Rule 15 motion is brought after the court-ordered deadline, the court must conduct a 'good cause' analysis under Rule 16 to determine if amendment of the scheduling order is appropriate." *Shank v. Carleton Coll.*, 329 F.R.D. 610, 613 (D. Minn. 2019). "The primary measure of good cause is the movant's diligence in attempting to meet the [scheduling] order's requirements." *Id.* at 613–14 (quoting *Sherman*, 532 F.3d at 716). If the district court determines that the movant was diligent, the court also considers any possible prejudice to the nonmoving party. *See id.* at 614.

Ordinarily, "[a] party does not meet the good cause standard under Rule 16(b) if the relevant information on which it based the amended claim was available to [the party] earlier in the litigation." *IBEW Loc. 98 Pension Fund v. Best Buy Co., Inc.*, 326 F.R.D. 513, 522 (D. Minn. 2018) (internal quotation marks omitted); *accord Target Corp. v. LCH Pavement Consultants, LLC*, 960 F. Supp. 2d 999, 1008 (D. Minn. 2013). Good cause may be established "[b]ased on a change in the law or the emergence of new facts." *See Am. Family Mut. Ins. Co. v. Hollander*, 705 F.3d 339, 346 (8th Cir. 2013); *accord id.* at 358 (Beam, J., concurring in part). But good cause is not necessarily established by the fact that an insufficiently pled claim was dismissed after the deadline to amend the complaint had passed. *See, e.g., Target Corp.*, 960 F. Supp. 2d at 1009. If "a

considerable amount of time has passed since the filing of a complaint and the motion to amend is made on the eve of trial and will cause prejudice and further delay, courts require the movant to provide some valid reason for the belatedness of the motion." *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 395 (8th Cir. 2016) (internal quotation marks omitted); *accord ARE Sikeston Ltd. P'ship v. Weslock Nat'l, Inc.*, 120 F.3d 820, 833 (8th Cir. 1997).

Here, as the magistrate judge correctly observed, TST prefaced its proposed amended complaint with an "explanatory note" asserting that the "core factual allegations are still the same" as the original complaint.  The magistrate judge, after reviewing the proposed amended complaint, found that TST was "merely reasserting three of the same, but already dismissed, claims on the same, albeit more detailed, factual allegations," and that TST sought "to add two new theories of liability . . . based on the same basic set of facts."  In its appeal of the magistrate judge's order, TST does not specifically challenge these findings and conclusions.  Therefore, TST has forfeited any such objections.

Even if TST had challenged this aspect of the magistrate judge's order, the record supports the magistrate judge's findings and conclusions as to this issue.  TST's proposed amended complaint does not purport to be based on a change of law or the emergence of new facts that were not previously available to TST.  To the contrary, as the magistrate judge correctly observed, most of the amended factual allegations in TST's proposed amended complaint are either matters of public record or involve facts that TST knew or had access to when it filed its original complaint.

In addition, TST did not seek to amend its complaint until the close of discovery, which was nearly two years after TST commenced this case and more than a year after the deadline to amend pleadings had passed.  These significant delays also provide a basis for denying a motion to amend.  *See, e.g.*, *Hammer v. City of Osage*, 318 F.3d 832, 844–45 (8th Cir. 2003) (affirming denial of motion to amend filed after discovery had closed); *Deutsche Fin. Servs. Corp v. BCS Ins. Co.*, 299 F.3d 692, 700 (8th Cir. 2002) (affirming denial of motion to amend in part because discovery had closed and time for amending pleadings had passed more than a year earlier); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 224 (8th Cir. 1994) (affirming denial of motion to amend made fourteen months after complaint was filed and six days after discovery deadline).

For these reasons, the magistrate judge's conclusion that TST failed to demonstrate good cause to amend the complaint is neither clearly erroneous nor contrary to law.

### 2.     Futility

The magistrate judge's conclusion that TST failed to demonstrate good cause under Rule 15 was sufficient, without more, to deny TST's untimely motion for leave to amend the complaint.  *See Shank*, 329 F.R.D. at 614.  Nonetheless, the magistrate judge also concluded that TST's amended complaint is futile because TST failed to correct the deficiencies identified in this Court's July 31, 2020 Order, which dismissed the constitutional claims that TST sought to reassert.  TST argues that this conclusion is

legally erroneous because the magistrate judge did not explain why TST's reasserted constitutional claims are futile.

A motion to amend a complaint may be denied for compelling reasons, including "futility of the amendment." *Id*. at 613 (internal quotation marks omitted). "An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (internal quotation marks omitted).

A complaint must allege sufficient facts such that, when accepted as true, a facially plausible claim to relief is stated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint fails to state a claim on which relief can be granted, dismissal is warranted. Fed. R. Civ. P. 12(b)(6). When determining whether a complaint states a facially plausible claim, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "labels and conclusions" are insufficient, as is a "formulaic recitation of the elements of a cause of action." *Id*. at 555. Legal conclusions couched as factual allegations may be disregarded. *See id*. On a motion to dismiss, a district court may consider the complaint, exhibits attached to the complaint, and documents that are necessarily embraced by the complaint, without converting the motion into one for summary judgment. *Mattes v. ABC Plastics,*

*Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).  The Court addresses, in turn, whether TST's proposed amended claims are futile.

### a.  TST's Proposed Amended Free-Speech Claim

TST's first proposed amended claim alleges violations of the Free Speech Clause of the First Amendment to the United States Constitution.   The Court previously dismissed TST's free-speech claim because TST alleged "no facts demonstrating that [the Rescission Resolution] did not apply equally to all entities seeking to erect a display or that TST was the only organization excluded from displaying a monument in Veterans Memorial Park." *Satanic Temple I*, 475 F. Supp. 3d at 961.

"Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  But one is not guaranteed "the right to communicate one's views at all times and places or in any manner that may be desired."  *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981).  For example, the First Amendment "does not guarantee access to property simply because it is owned or controlled by the government."  *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 803 (1985).  And there is not a "private constitutional right to erect a structure on public property" because, if there were, "traditional public forums, such as our public parks, would be cluttered with all manner of structures."  *Occupy Minneapolis v. County of Hennepin*, 866 F. Supp. 2d 1062, 1071 (D. Minn. 2011) (quoting *Lubavitch Chadbad House, Inc. v. City of Chicago*, 917 F.2d 341, 347 (7th Cir. 1990)).  When, as here, the government establishes a limited public forum, any restriction on speech must be

viewpoint neutral and "reasonable in light of the purpose served by the forum." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001). But the government need not keep a limited public forum open indefinitely. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983).

TST's amended free-speech claim does not correct the deficiencies identified in the Court's July 31, 2020 Order. Belle Plaine had no obligation to keep open indefinitely the limited public forum in Veterans Memorial Park. *See id.* And TST does not plausibly allege that Belle Plaine closed the limited public forum in a viewpoint-discriminatory manner—to the contrary, Belle Plaine closed the limited public forum entirely. Nor does TST plausibly allege that, while the limited public forum was open, Belle Plaine imposed any unreasonable viewpoint-discriminatory restrictions.

Accordingly, TST's proposed amended free-speech claim is futile.

### b. TST's Proposed Amended Free-Exercise Claim

TST's second proposed amended claim alleges violations of the Free Exercise Clause of the First Amendment. The Court previously dismissed TST's free-exercise claim because TST failed to plausibly allege that Belle Plaine's closure of the limited public forum placed a substantial burden on TST's religious practices. *Satanic Temple I*, 475 F. Supp. 3d at 959.

To successfully plead a free-exercise violation, TST must establish that the governmental activity at issue places a substantial burden on its religious practice. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). Free exercise of religion is

substantially burdened when a regulation "significantly inhibit[s] or constrain[s] conduct or expression that manifests some central tenet of a person's individual religious beliefs; . . . meaningfully curtail[s] a person's ability to express adherence to his or her faith; or den[ies] a person reasonable opportunity to engage in those activities that are fundamental to a person's religion." *United States v. Ali*, 682 F.3d 705, 709–10 (8th Cir. 2012) (internal quotation marks omitted).   The Free Exercise Clause requires only that the law at issue is "neutral and generally applicable; incidental burdens on religion are usually not enough to make out a free exercise claim." *New Doe Child v. United States*, 901 F.3d 1015, 1025 (8th Cir. 2018).

In its proposed amended free-exercise claim, TST alleges that installing a monument in Veterans Memorial Park was "an expression of its core religious beliefs," which compel TST to "demand equal accommodation whenever a government opens the door to religion."   These allegations do not plausibly allege a substantial burden on TST's religious practice.   TST's allegations establish that Belle Plaine provided an equal accommodation by granting a limited-time permit to TST on the same terms as any other applicant.   TST's allegations do not plausibly establish that Belle Plaine's closure of the limited public forum was not a neutral, generally applicable law.   Indeed, when Belle Plaine closed the limited public forum, the closure applied equally to all.   The government is constitutionally permitted to close a limited public forum.   *See Perry Educ.*, 460 U.S. at 46.   And the First Amendment does not include a constitutional right to use public property as a place of worship or to erect a private structure.   *See, e.g.*,

*Taylor v. City of Gary*, 233 F. App'x 561, 562 (7th Cir. 2007) (observing that "the Free Exercise Clause does not give [plaintiff] the right to demand that the City provide him with municipally-owned property as a place of worship" (citing *Prater v. City of Burnside*, 289 F.2d 417, 427–28 (6th Cir. 2002)); *Knights of Columbus v. Town of Lexington*, 272 F.3d 25, 33 (5th Cir. 2001) (observing that "a total ban on unattended structures in a public forum would pass muster" and collecting cases (citing *Capitol Square Rev. & Advisory Bd. v. Pinette*, 515 U.S. 753 (1995))); *accord Occupy Minneapolis*, 866 F. Supp. 2d at 1071. The "Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451 (1988) (internal quotation marks omitted).

Accordingly, TST's proposed amended free-exercise claim is futile.

### c.  TST's Proposed Amended Establishment Clause Claim

TST's third proposed amended claim alleges that Belle Plaine's opening of the limited public forum in Veterans Memorial Park violated the Establishment Clause of the First Amendment because Belle Plaine acted with the purpose of promoting Christianity. TST did not previously assert such a claim.

The Establishment Clause prohibits Congress from making any law "respecting an establishment of religion." U.S. Const. amend. I. "It is an elemental First Amendment principle that government may not coerce its citizens to support or participate in any religion or its exercise." *New Doe Child*, 901 F.3d at 1023 (quoting *Town of Greece v.*

*Galloway*, 572 U.S. 565, 586 (2014)).   But "[s]imply having religious content or promoting a message consistent with a religious doctrine does not run afoul of the Establishment Clause." *Van Orden v. Perry*, 545 U.S. 677, 690 (2005).  Offense does not equate to coercion, as adults often encounter speech that they find disagreeable.  *New Doe Child*, 901 F.3d at 1024 (citing *Galloway*, 572 U.S. at 589).  As such, "an Establishment Clause violation is not made out any time a person experiences a sense of affront from the expression of contrary religious views."  *Id.* at 1023–24 (quoting *Galloway*, 572 U.S. at 589).  This is especially true in circumstances when any other member of the public is invited to express her or his own convictions.  *Galloway*, 572 U.S. at 589.[8]

In its proposed amended complaint, TST alleges that one of its members saw the Christian monument in Veterans Memorial Park approximately twice daily and the Christian monument "offended [her] because it made her feel like a second class citizen in her own town."  This allegation is insufficient to state a claim under the Establishment Clause, especially given that any member of the public could apply for a permit to place a monument in Veterans Memorial Park reflecting her or his own convictions.  *Galloway*, 572 U.S. at 589.  Indeed, as addressed above, TST's allegations reflect that Belle Plaine's temporary establishment of a limited public forum was viewpoint neutral on its face and

---

[8]     TST argues that its Establishment Clause claim should be evaluated under the *Lemon* test.  *See Lemon v. Kurtzman*, 403 U.S. 602 (1971).  But the Supreme Court of the United States frequently has not applied the *Lemon* test, and repeatedly has criticized its application, particularly in the context of a "passive monument" erected on public property.  *See Van Orden*, 545 U.S. at 686; *see also Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2080–81 (2019).

in effect.  Pursuant to the Enacting Resolution and the permit Belle Plaine issued, TST had an equal opportunity to place its display in Veterans Memorial Park during the same timeframe that the Christian monument was on display.  Moreover, TST's allegations reflect that the Christian monument was a "passive monument" that did not actively advance a particular religious doctrine or express hostility toward other religions.  *See Van Orden*, 545 U.S. at 686, 691 (noting as significant the passive nature of the challenged monument, and contrasting that passivity with more active religious endorsement, such as government-compelled prayer).

Accordingly, TST's proposed amended Establishment Clause claim is futile.

### d.  TST's Proposed Amended Equal-Protection Claim

TST's fourth proposed amended claim alleges violations of the Equal Protection Clause of the Fourteenth Amendment.  The Court previously dismissed TST's equal-protection claim because TST failed to plausibly allege that TST and Belle Plaine Veterans Club were similarly situated, that TST is part of a suspect class, or that the Rescission Resolution is either discriminatory on its face or has both a discriminatory purpose and discriminatory impact.  *Satanic Temple I*, 475 F. Supp. 3d at 962.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  To state an equal-protection claim, a complaint must allege that the plaintiff was "treated differently than other persons who were in all relevant respects similarly situated."  *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 820 (8th Cir. 2011) (internal quotation

marks omitted).    In doing so, a plaintiff must allege that the challenged law or government action either is discriminatory on its face or has both a discriminatory purpose and discriminatory impact.  *See Washington v. Davis*, 426 U.S. 229, 242 (1976).

In its proposed amended complaint, TST again alleges that Belle Plaine received disparate treatment as compared to the Belle Plaine Veterans Club.[9]  Even assuming that TST and the Belle Plaine Veterans Club are similarly situated, TST fails to plead a viable equal-protection claim with respect to the Enacting Resolution and the Rescission Resolution because TST does not allege that either policy is discriminatory on its face or has a discriminatory purpose or impact.  *See Mitchell v. Dakota Cnty. Soc. Servs.*, 357 F. Supp. 3d 891, 902 (D. Minn. 2019) (citing *Davis*, 426 U.S. at 242).

As the Court observed when it previously dismissed TST's equal-protection claim, the text of the challenged policies demonstrates that both policies applied equally to all entities that sought to erect a display in Veterans Memorial Park.  *Satanic Temple I*, 475 F. Supp. 3d at 963.  TST again alleges that the Belle Plaine Veterans Club was able to erect and voluntarily remove its display prior to the passage of the Rescission Resolution. But this difference in treatment is attributable to *when* Belle Plaine enacted the Rescission Resolution in relation to the completion of each group's display.  TST does *not* allege facts demonstrating that Belle Plaine had control over whether the Belle Plaine Veterans Club erected its display earlier than TST erected its display.  TST alleges that

---

[9]      TST also alleges disparate treatment as compared to the nonprofit organization Alliance Defending Freedom (ADF).  But because TST does not allege any facts about whether TST and ADF are similarly situated, TST does not state an equal-protection claim as to ADF.

Belle Plaine took longer to approve TST's permit application than the Belle Plaine Veterans Club's permit application.  But it is undisputed that both entities received a permit on the same day, and both entities' permits were terminated at the same time.  In short, with respect to the Enacting Resolution and the Rescission Resolution, TST's allegations do not plausibly allege disparate treatment or disparate impact, as required to state an equal-protection claim.

TST's proposed amended equal-protection claim also alleges that Belle Plaine did not provide TST with equal access to the policymaking process.[10]  The United States Constitution "does not grant to members of the public generally a right to be heard by public bodies making decisions of policy."  *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 283 (1984) (citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441 (1915)).  "Plainly, public bodies may confine their meetings to specified subject matter and may hold non-public sessions to transact business."  *Id.* at 284 (quoting *City of Madison Joint Sch. Dist. v. Wis. Emp. Rels. Comm'n*, 429 U.S. 167, 175 n.8 (1976)).  In *Knight*, the Supreme Court elaborated on this point:

> Policymaking organs in our system of government have never operated under a constitutional constraint requiring them to afford every interested member of the public an opportunity to present testimony before any policy is adopted.

---

[10]    Notably, TST does not allege that it is similarly situated to the Belle Plaine Veterans Club as to each entity's access to Belle Plaine policymakers.  TST and its directors are not located in Minnesota, whereas the Belle Plaine Veterans Club is in Belle Plaine.  This geographic difference is relevant to each entity's respective ease of access to Belle Plaine's policymakers.  Moreover, a city's mayor and city council reasonably would be expected to prioritize communicating with, and addressing the concerns of, local constituents in contrast to an out-of-state organization and its directors.

> Legislatures throughout the nation, including Congress, frequently enact bills on which no hearings have been held or on which testimony has been received from only a select group. Executive agencies likewise make policy decisions of widespread application without permitting unrestricted public testimony. Public officials at all levels of government daily make policy decisions based only on the advice they decide they need and choose to hear. To recognize a constitutional right to participate directly in government policymaking would work a revolution in existing government practices.

*Id.* The Supreme Court concluded that the appellees' purported "interest in a government audience for their policy views . . . finds no special protection in the Constitution," and rejected appellees' claims under both the First Amendment and the Equal Protection Clause. *Id.* at 291.

TST alleges that Belle Plaine gave the Belle Plaine Veterans Club "unique access to assist in the modifications of the proposal" for the Enacting Resolution but "did not give the same benefit to . . . TST." For example, TST alleges that Belle Plaine's policymakers had "off-the-record" conversations with members of the Belle Plaine Veterans Club. But these facts, even if true, cannot establish a constitutional violation. "Absent statutory restrictions, the state must be free to consult or not to consult whomever it pleases" with respect to policymaking.[11] *Id.* at 285. Moreover, TST does not allege that Belle Plaine denied TST *complete* access to the process. The allegations recount numerous city council meetings and other correspondence between TST and Belle Plaine's city personnel. And the proposed amended complaint reflects that TST

---

[11] Although TST's proposed amended complaint contends that Belle Plaine violated Minnesota's statutory open-meeting laws, TST does not advance any statutory claims in its proposed amended complaint.

had private off-the-record conversations with city personnel.  For instance, TST alleges that "[s]hortly before the [city council] meeting, . . . TST called the City Attorney to remind the City of its intent to place a display if the Park was opened to private monuments."  Notably, TST does not allege that it ever requested, but was denied, an opportunity to have private off-the-record communications with Belle Plaine's policymakers.  Thus, TST undisputedly had access to Belle Plaine's policymakers.

For these reasons, TST's proposed amended equal-protection claim is futile.

### e.  TST's Proposed Amended Due-Process Claim

TST's last proposed amended claim alleges violations of the Due Process Clause of the Fourteenth Amendment.  TST did not previously assert such a claim.

Procedural-due-process claims are reviewed in two steps.  *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).  The first step is to determine whether the plaintiff has been deprived of a protected liberty or property interest.  *Id.*  If no liberty or property interest exists, there can be no due-process violation.  *See Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997).  If the plaintiff has a protected liberty or property interest, however, the second step is to consider what process is due.  *Senty-Haugen*, 462 F.3d at 886 (citing *Mathews v. Eldridge*, 424 U.S. 319, 332-35 (1976)).

TST alleges that, "[b]y providing TST with a one-year permit, [Belle Plaine] conveyed to TST a vested, protectible property right."  This allegation is incorrect both factually and legally.  This allegation is factually incorrect because, as addressed above, Belle Plaine did not provide TST with a one-year permit.  Rather, Belle Plaine provided

TST with a permit for *up to* one year that could be terminated by Belle Plaine at any time with ten days' notice.  And Belle Plaine provided the requisite ten days' notice.

This allegation also is legally incorrect because Minnesota law does not recognize a constitutionally protected property interest in the permit TST received.  "Protected property interests are created by state law, but federal law determines whether the interest rises to the level of a constitutionally-protected property interest."  *Ellis v. City of Yankton*, 69 F.3d 915, 917 (8th Cir. 1995).  Minnesota law "limit[s] the property rights that are entitled to due process to real property rights, final judgments, and certain vested statutory rights."  *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 658 (Minn. 2012).  A protected property interest is "a legitimate claim to entitlement . . . as opposed to a mere subjective expectancy."  *Bituminous Materials, Inc. v. Rice County*, 126 F.3d 1068, 1070 (8th Cir. 1997) (internal quotation marks omitted).  "A claim to entitlement arises, for these purposes, when a statute or regulation places substantial limits on the government's exercise of its licensing discretion."  *Id.*  Here, pursuant to the Enacting Resolution, Belle Plaine reserved the right to close the limited public forum in Veterans Memorial Park and terminate TST's permit at any time with ten days' notice.  And, as addressed above, Belle Plaine had no constitutional obligation to keep the limited public forum open indefinitely.  *See Perry Educ.*, 460 U.S. at 46.  As such, TST has not alleged the existence of a protected property interest.

Accordingly, TST's proposed amended due-process claim is futile.

In summary, the magistrate judge's denial of TST's untimely motion to amend the complaint, based on both TST's failure to demonstrate good cause and the futility of TST's proposed amended claims, is affirmed.

### III.   Belle Plaine's Motion to Dismiss (*Satanic Temple II*)

Belle Plaine also moves to dismiss the complaint in *Satanic Temple II*, arguing that TST's claims are barred by res judicata based on *Satanic Temple I* and, in the alternative, that TST fails to state a claim on which relief can be granted.

### A.   Res Judicata

"Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979). Res judicata, also known as claim preclusion, "precludes the relitigation of a claim on grounds that were raised or could have been raised in the prior action." *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir. 1990). The defense of res judicata may be raised in a motion to dismiss when the defense can be established from the face of the pleadings, including the complaint, materials attached to the complaint, and public records and materials embraced by the complaint. *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763–64 (8th Cir. 2012).

Federal law applies to the res judicata analysis here because *Satanic Temple I* was a federal-question case decided by this Court. *See Schaefer v. Putnam*, 827 F.3d 766, 769 (8th Cir. 2016) ("The law of the forum that rendered the first judgment controls the res judicata analysis." (internal quotation marks omitted)). Under federal law, claim

preclusion applies "when (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018) (internal quotation marks omitted).

TST does not dispute that this Court had proper jurisdiction over *Satanic Temple I*, that both lawsuits involve the same parties, and that both lawsuits are based on the same claims or causes of action. And the record clearly demonstrates that these res judicata factors are established here. Accordingly, the only dispute as to res judicata is whether *Satanic Temple I* resulted in a final judgment on the merits as to the claims TST asserts in *Satanic Temple II*.

"The denial of a motion to amend a complaint in one action is a final judgment on the merits barring the same complaint in a later action." *Pro. Mgmt. Assocs., Inc. v. KPMG LLP*, 345 F.3d 1030, 1032 (8th Cir. 2003) (citing *Landscape Props., Inc. v. Whisenhunt*, 127 F.3d 678, 683 (8th Cir. 1997)). "Denial of leave to amend constitutes res judicata on the merits of the claims [that] were the subject of the proposed amended pleading." *Id.* (quoting *King v. Hoover Grp., Inc.*, 958 F.2d 219, 222–23 (8th Cir. 1992)). "This is so even when denial of leave to amend is based on reasons other than the merits, such as timeliness." *Id.* (citing *N. Assurance Co. v. Square D Co.*, 201 F.3d 84, 88 (2d Cir. 2000), and *Poe v. John Deere Co.*, 695 F.2d 1103, 1107 (8th Cir. 1982)).

Here, TST's complaint in *Satanic Temple II* undisputedly is based on TST's proposed amended complaint in *Satanic Temple I*, the filing of which was denied based on both futility and lack of good cause due to TST's untimeliness and lack of diligence. Indeed, the first page of TST's complaint in *Satanic Temple II* includes an "explanatory note" that provides as follows:

> 1.   This complaint is intended to correct the pleading deficiencies identified in the Court's order of dismissal without prejudice of the constitutional issues in a sister case for lack of factual detail. . . .   The core factual allegations are still the same: essentially taking issue with the fact that the City opened a limited public forum to promote a Christian monument but closed it to exclude a Satanic one.
>
> 2.   A version of this complaint was proposed as an amended complaint in the same case. . . .   But the Magistrate rejected it.

The substance of the complaint in *Satanic Temple II* is, in all material respects, identical to the content of the proposed amended complaint in *Satanic Temple I*.[12]   Thus, the magistrate judge's denial of TST's motion to amend the complaint in *Satanic Temple I* operates as "a final judgment on the merits barring the same complaint" in *Satanic Temple II.   See Pro. Mgmt. Assocs.*, 345 F.3d at 1032.

TST attempts to avoid this result, arguing that the denial of its motion to amend the complaint in *Satanic Temple I* is not a judgment on the merits as to those claims because (1) a magistrate judge lacks authority to enter a final judgment on the merits and

---

[12]   The complaint in *Satanic Temple II* includes three additional claims alleging violations of the Minnesota Constitution, but these claims are based on the same factual allegations as TST's federal constitutional claims.

(2) the denial of leave to amend a complaint is not a judgment on the merits when the claims previously were dismissed without prejudice. Both of TST's arguments lack merit.

TST first contends that res judicata cannot apply because the denial of TST's motion to amend in *Satanic Temple I* was decided by a magistrate judge. It is within a magistrate judge's authority to deny a motion to amend a pleading. 28 U.S.C. § 636(b)(1)(A). It "is widely accepted that appeal is the plaintiff's only recourse when a motion to amend is denied." *Arrigo v. Link*, 836 F.3d 787, 799 (7th Cir. 2016) (internal quotation marks omitted); *accord Poe*, 695 F.2d at 1107 (observing that plaintiff "could have appealed from the denial of her motion to amend [but] did not").[13] For res judicata purposes, it is immaterial whether the denial of a motion to amend was rendered by a magistrate judge. *See, e.g.*, *Curtis v. Citibank, N.A.*, 226 F.3d 133, 136, 140–41 (2d Cir. 2000) (holding that claims in second lawsuit were barred by res judicata because magistrate judge denied leave to amend complaint to add those claims in first lawsuit). TST correctly observes that a magistrate judge cannot render a final decision on a dispositive motion. *See* 28 U.S.C. § 636(b)(1). But this observation is immaterial. When a motion to amend is denied, the reason that such a ruling has preclusive effect on

---

[13]   Notably, as in *Poe*, in which the Eighth Circuit held that res judicata barred claims that were the subject of an unsuccessful motion to amend, here TST similarly did not appeal the substance of the magistrate judge's denial of its motion to amend the complaint. Instead, when appealing the magistrate judge's order in *Satanic Temple I*, TST argued that its motion to amend the complaint is "mooted" by *Satanic Temple II*. TST's logic is backwards—its proper recourse was to appeal the denial of its motion to amend the complaint, not to file a new lawsuit.

a subsequent lawsuit is not because the denial of leave to amend is dispositive.  *See N. Assurance Co.*, 201 F.3d at 88 (observing that "it is not the actual decision to deny leave to amend that forms the basis of the bar").  Instead, the preclusive effect "is based on the requirement that the plaintiff must bring all claims at once against the same defendant relating to the same transaction or event."  *Id.*  "Thus, the actual decision denying leave to amend is no more than a proxy to signify at what point claims have been forfeited due to a plaintiff's failure to pursue all claims against a particular defendant in one suit."  *Id.*

TST also contends that the denial of leave to amend the complaint is not a judgment on the merits when the claims previously were dismissed without prejudice.  It is true that this Court's July 31, 2020 Order dismissed TST's constitutional claims without prejudice.  It also is true, contrary to Belle Plaine's arguments, that the dismissal of a claim without prejudice is *not* a judgment on the merits.  *See Jaramillo v. Burkhart*, 59 F.3d 78, 79 (8th Cir. 1995) (observing that, "unlike a dismissal without prejudice, a dismissal with prejudice operates as a rejection of the plaintiff's claims on the merits").  But these observations, although true, are beside the point.  The preclusive effect on *Satanic Temple II* does not arise from this Court's July 31, 2020 dismissal of TST's claims without prejudice in *Satanic Temple I*.  Rather, the preclusive effect on *Satanic Temple II* arises from the denial of TST's untimely and futile motion to amend the complaint in *Satanic Temple I*.

In support of its argument, TST relies on *Kulinski v. Medtronic Bio-Medicus, Inc.*, in which the Eighth Circuit concluded that the denial of a motion to amend the complaint

in an earlier action was not an adjudication on the merits. 112 F.3d 368, 373. But in *Kulinski*, unlike in this case, the first lawsuit was dismissed for lack of subject-matter jurisdiction. *Id.* Significantly, res judicata requires that the "first suit was based on proper jurisdiction." *Elbert*, 903 F.3d at 782. Because *Kulinski* involved a prior dismissal based on lack of subject-matter jurisdiction, it is inapposite. *See Crystal Import Corp. v. AVID Identification Sys., Inc.*, 582 F. Supp. 2d 1166, 1170 n.4 (D. Minn. 2008) (applying res judicata and similarly distinguishing *Kulinski* "because the denial of the motion to amend in that decision was rendered by a court lacking subject-matter jurisdiction" and "[i]mplicitly therefore, all decisions of the court were then invalidated"). TST's reliance on *Kulinski* is misplaced.

Nor is it material that *Satanic Temple I* remained ongoing when TST filed its complaint in *Satanic Temple II*. Indeed, courts apply res judicata to claims that were the subject of an unsuccessful motion to amend even if, as here, the first-filed lawsuit had not yet reached its conclusion when the plaintiff filed a second lawsuit. *See, e.g.*, *Curtis*, 226 F.3d at 136, 140 (applying res judicata to duplicative claims in second lawsuit filed while first lawsuit remained ongoing); *Crystal Import*, 582 F. Supp. 2d at 1170 (same); *see also Arrigo*, 836 F.3d at 799–800 (rejecting argument that applying res judicata was premature before the first-filed action had reached final judgment). The *Curtis* decision is instructive. In *Curtis*, as here, after a magistrate judge denied a motion to amend the complaint, the plaintiffs "appealed this denial to the district court and, while waiting for that court to rule, filed their proposed second amended complaint as a new complaint."

226 F.3d at 136.  The Second Circuit held that the plaintiff was barred by res judicata from filing a duplicative complaint alleging "claims arising out of the same events" as those alleged in the first lawsuit:

> If plaintiffs had timely raised those allegations, they would have been heard in *Curtis I*.  By filing them in a second action, plaintiffs attempted to avoid the consequences of their delay.  It was not an abuse of discretion to prevent them from doing so.

*Id.* at 140.  Here, like the circumstances in *Curtis*, TST attempted to avoid the consequences of the magistrate judge's ruling in *Satanic Temple I* by filing *Satanic Temple II*.

Significantly, the doctrine of res judicata reflects the principle that courts should not be "required to adjudicate, nor defendants to address, successive actions arising out of the same transaction, asserting breach of the same duty."  *Nilsen v. City of Moss Point*, 701 F.2d 556, 563 (5th Cir. 1983) (observing that to "reward [plaintiff] for her own delinquency by permitting her to maintain [a successive] action" after the denial of an untimely motion to amend in an earlier action "would be clearly at variance with this principle").  To allow TST's second lawsuit to continue would render meaningless this Court's decision to uphold the magistrate judge's denial of TST's untimely and futile motion for leave to amend its complaint to add the same claims in its first lawsuit.  *See Arrigo*, 836 F.3d at 799 (reaching same conclusion in analogous circumstances).

For these reasons, res judicata bars TST's complaint in *Satanic Temple II*, and Belle Plaine's motion to dismiss on this basis is granted.[14]

## IV.     Belle Plaine's Motion for Sanctions (*Satanic Temple II*)

Belle Plaine moves for sanctions against TST's counsel pursuant to Federal Rule of Civil Procedure 11, arguing that the filing of *Satanic Temple II* is a frivolous attempt to circumvent the rulings in *Satanic Temple I* and waste judicial resources.  Specifically, Belle Plaine seeks the attorneys' fees it incurred responding to the complaint and seeking sanctions in *Satanic Temple II*.

Rule 11 of the Federal Rules of Civil Procedure requires a party to certify, for any pleading or motion, that:

> (1)     it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2)     the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3)     the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

---

[14]     In light of this conclusion, the Court need not address Belle Plaine's alternative argument for dismissal for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).  But even if *Satanic Temple II* were not barred by res judicata, all of TST's claims in *Satanic Temple II* fail to state a claim for the same reasons addressed above pertaining to the futility of TST's proposed amended complaint in *Satanic Temple I*.

(4)     the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  To fulfill this obligation, Rule 11 requires counsel to "conduct a reasonable inquiry of the factual and legal basis for a claim before filing." *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003).  An attorney is subject to sanctions if a "reasonable and competent" attorney would not believe in the legal merit of the argument. *Id.*

When determining whether Rule 11 sanctions are warranted, a district court must use an objective standard of reasonableness and consider factors such as the alleged wrongdoer's history, the severity of the violation and the degree to which malice or bad faith contributed to the violation. *See Pope v. Fed. Express Corp.*, 49 F.3d 1327, 1328 (8th Cir. 1995); *Isakson v. First Nat'l Bank*, 985 F.2d 984, 986 (8th Cir. 1993).  A sanction imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4).

The Eighth Circuit repeatedly and unequivocally has held that "a district court abuses its discretion by refusing to sanction a plaintiff and his counsel under Rule 11 for filing and maintaining a frivolous lawsuit when the plaintiff seeks to relitigate claims [the plaintiff] had been denied leave to serve against the same defendant in an earlier lawsuit." *Pro. Mgmt. Assocs.*, 345 F.3d at 1033 ("Given the well-settled law of res judicata under the circumstances in this case, [plaintiff's] counsel should have known" that its second

lawsuit was barred by the denial of a motion to amend the complaint in its first lawsuit); *King*, 958 F.2d at 223 (concluding that "the district court erred in determining that sanctions and costs were inappropriate" because "counsel should have realized that *King II* was barred by *King I* because of the identity of the facts and issues"); *accord Landscape Props.*, 127 F.3d at 683 (affirming district court's award of Rule 11 sanctions in the same circumstances); *see also Meyer v. U.S. Bank Nat'l Ass'n*, 792 F.3d 923, 927 (8th Cir. 2015) (observing that Eighth Circuit has "repeatedly approved sanctions in cases where plaintiffs attempted to evade the clear preclusive effect of earlier judgments"). After the magistrate judge denied TST's motion to amend its complaint, TST's recourse "was to appeal, not to start a new action." *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 16 (1st Cir. 2020); *accord Arrigo*, 836 F.3d at 799 (7th Cir. 2016); *Poe*, 695 F.2d at 1107. TST did not do so here, but instead improperly filed a second frivolous lawsuit.[15] This tactic resulted in a waste of resources, both for Belle Plaine and for the Court. *See Arrigo*, 836 F.3d at 799–800 (observing, in analogous circumstances, that plaintiff's tactics wasted the resources of the court and the parties).

For these reasons, Belle Plaine's motion for sanctions, in the form of the attorneys' fees Belle Plaine incurred responding to the complaint and seeking sanctions in *Satanic Temple II*, is granted.

---

[15]    Moreover, when TST subsequently appealed the magistrate judge's order in *Satanic Temple I* on other grounds, TST argued that its motion for leave to amend the complaint should be "denied as moot" and that the magistrate judge's order should be "vacated." Thus, TST did not even *attempt* to pursue its proper recourse.

# ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1.    Defendant's motion for summary judgment as to Plaintiff's promissory-estoppel claim in *Satanic Temple I*, No. 19-cv-1122, (Dkt. 81), is **GRANTED**.

2.    Plaintiff's motion to strike in *Satanic Temple I*, No. 19-cv-1122, (Dkt. 100), is **DENIED**.

3.    The magistrate judge's January 26, 2021 Order in *Satanic Temple I*, No. 19-cv-1122, (Dkt. 79), is **AFFIRMED**.

4.    Defendant's motion to dismiss the complaint in *Satanic Temple II*, No. 21-cv-0336, (Dkt. 10), is **GRANTED**.

5.    Plaintiff's motion to strike in *Satanic Temple II*, No. 21-cv-0336, (Dkt. 29), is **DENIED**.

6.    Defendant's motion for sanctions in *Satanic Temple II*, No. 21-cv-0336, (Dkt. 17), is **GRANTED**.  Within fourteen days after the date of this Order, Defendant shall file a motion and supporting evidence as to the attorneys' fees Defendant incurred responding to the complaint and seeking sanctions in *Satanic Temple II*, No. 21-cv-0336.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  September 15, 2021                       s/Wilhelmina M. Wright
                                                Wilhelmina M. Wright
                                                United States District Judge